## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 5146. Decided September 21, 1904.]

F. W. SUKSDORF, *Appellant,* v. JOSEPH HUMPHREY *et al.,*
*Respondents.*[1]

ADVERSE POSSESSION—UNSURVEYED LAND—MISTAKE IN BOUND-
ARY LINE—CLAIM OF RIGHT. One who settles upon unsurveyed
government land and builds a house and makes improvements
under a mistake as to where the boundary line will be run, and
thereby incloses a strip of the adjoining tract, does not com-
mence to hold such strip by adverse possession until the gov-
ernment lines are established, nor does such party so hold after
the establishment of the lines and receipt of the patent, where it
appears that no claim was made to any part of the adjoining tract,
and that after talk with the adjoining owner about moving back
the fence, consent was given that it remain temporarily; hence
it is error to conclude that such party was owner in fee of the
strip and that title thereto passed to her grantee, who claimed to
have purchased without notice of the true boundary line.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered January 4, 1904, upon find-
ings in favor of the defendants, dismissing on the merits
an action of ejectment, after a trial before the court with-
out a jury. Reversed.

*John M. Gleeson* and *James Dawson,* for appellants, to
the point that the inclosing and possession of land through

[1]Reported in 77 Pac. 1071.

a mere mistake as to the boundary, with no intention of claiming the land outside of the true boundary line, does not constitute adverse possession, cited: *Phinney v. Campbell,* 16 Wash. 203, 47 Pac. 502; *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936; *Preble v. Maine Central R. Co.,* 85 Me. 260, 27 Atl. 149, 35 Am. St. 366, 21 L. R. A. 829; *Knowlton v. Smith,* 36 Mo. 507, 88 Am. Dec. 152; *Finch v. Ullman,* 105 Mo. 255, 16 S. W. 863, 24 Am. St. 383; *Grube v. Wells,* 34 Iowa 148; *Fisher v. Muecke,* 82 Iowa 547, 48 N. W. 936; *Kunze v. Evans,* 107 Mo. 487, 18 S. W. 36, 28 Am. St. 435; 1 Cyc., 1037.

*Alfred E. Barnes, Geo. A. Latimer,* and *Alfred M. Craven,* for respondents, contended, among other things, that the inclosing of lands through a mistake as to the boundary line, under the belief and claim of ownership, constitutes adverse possession. *Ramsey v. Glenny,* 45 Minn. 401, 48 N. W. 322, 22 Am. St. 737; *Levy v. Yerga,* 25 Neb. 764, 41 N. W. 773, 13 Am. St. 525; *Battner v. Baker,* 108 Mo. 311, 18 S. W. 911, 32 Am. St. 606; *Caufield v. Clark,* 17 Ore. 473, 21 Pac. 443, 11 Am. St. 845; *Woodward v. Faris,* 109 Cal. 12, 41 Pac. 781; *Yetzer v. Thoman,* 17 Ohio St. 130, 91 Am. Dec. 122; *French v. Pearce,* 8 Conn. 439, 21 Am. Dec. 680; *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936.

PER CURIAM.—Respondents have made a motion to strike the statement of facts, "for the reason that the same does not contain all of the material evidence adduced at the trial," and in their argument mention a number of exhibits as not being attached to the statement. The exhibits are attached to the statement, and the court's certificate seems to be in proper form. The exhibits became a part of the record when they were introduced and received as evidence in the case, and the date of their physical annex-

ation to the statement is not material so long as they are sufficiently endorsed and marked for identification. Motion denied.

This was an action in ejectment, commenced by the appellant against the respondents to recover possession of a certain strip of land, containing about 4.3 acres, along the east line of sec. 1, tp. 25 N., R. 45 E., W. M. Section 6, tp. 25 N., R. 46, and sec. 1, tp. 25 N., R. 45, situate in Spokane county, are coterminous. The west line of section six is the east line of section one, and this line is also the northern part of the township line between townships 25 and 26. The east half of section one is surveyed in subdivisions, designated as lots 1, 2, 7, and 8, and the southeast quarter. Section six is a fractional section, consisting of about 150 acres, and is divided into lots 1, 2, 3, 4, and 5. Section one was railroad land. The record title to lot 8, and the southeast quarter and other parts of the section, was acquired by the appellant from the Northern Pacific Railway Company in 1902, by a deed issued in compliance with a contract executed in 1897. In the year 1884 one Anna Boehrig and her husband settled upon section six, with a view to acquiring it under the homestead laws, but at that time the line between section six and section one had not been established by the United States; and, in building their house and making their other improvements, the testimony shows that it was their intention to build the house and make the improvements on said section six; that subsequently, in 1897, when said boundary line between section one and section six was established by the United States, it was found that their fence ran over the line, and inclosed 4.3 acres in section one, being the land in dispute. The house was partly in section one and partly in section six. A number of fruit trees also were set out upon the tract in question. Some time prior to 1902, the

said Anna Boehrig—her husband having previously died—made proof upon her homestead in section six, and that year sold the same to respondents.

Respondents in their answer deny the material allegations of the complaint, and, as an equitable defense, claim title by reason of open, notorious, adverse possession under a claim of right, in themselves and their grantor, for more than ten years. It was stipulated that the property described in the deed from Mrs. Boehrig to the respondents was lots 2, 3, 4 and 5, of section six. The testimony clearly shows that, when the Boehrigs settled there, they intended to, and thought they had, put their improvements all east of where the line would ultimately be established between sections one and six; that they did not intend to claim any part of section one; that the plaintiff and Mrs. Boehrig were old friends; that, at the time the survey was made by the government in 1897, Mrs. Boehrig had become a widow; that the plaintiff had talked to Mrs. Boehrig about moving the fence back to the line, but that Mrs. Boehrig had explained that she was unable to do it herself, and that her children were too small to be of any assistance; that the plaintiff consented that the fence remain temporarily where it was; that Mrs. Boehrig had moved to Spokane before selling the property; that there is a conflict in the testimony as to whether Mr. Humphrey knew where the lines were when he bought the property, Mrs. Boehrig having testified that she told Mr. Humphrey that she did not own the strip in section one, and could not sell it to him, and Mr. Humphrey having testified that she did not so inform him until some two weeks after he purchased the land. The lower court found, as a conclusion of law, that Anna Boehrig became and was the owner in fee of said strip of land by adverse possession long prior to the commence-

ment of the action, and rendered judgment dismissing the action.

The only question involved in this action is as to whether the possession by Anna Boehrig of the land in question constituted open, notorious, adverse possession under a claim of right. In *McAuliff v. Parker,* 10 Wash. 141, 38 Pac. 744, this court said:

"All the authorities hold that the question of adverse possession is a question of fact, and it must be a possession that is known to the owner of the legal title."

For the purposes of this case, it might be assumed that the land in question was, prior to 1897—when the township line was surveyed by the government—unsurveyed government land, and, there being no question of acquiescence in a division line, the possession of respondents' grantor was that of a mere squatter; and that the statute of limitations did not commence to run against the appellant, at least until the line was established in 1897. The statute commenced to run on the date that the right of action accrued to the appellant or his grantor. In Sedgwick & Wait, Trial of Title to Land (2d ed.), at page 50, it is said:

"The party who seeks to change the possession by ejectment, must first establish a legal title to it."

No doubt the legal title to all of the surveyed land was in the Northern Pacific Railroad Company when the map of definite location was filed in 1880, and an action in ejectment might have been maintained against any person subsequently taking possession thereof; but not so with reference to the unsurveyed land. The government was inviting her citizens to settle upon the unsurveyed public domain, and it is hardly necessary to cite authorities to the effect that an action in ejectment will not lie until the plaintiff can locate the boundaries of his land with

some degree of certainty. For the same reason, possession in a defendant cannot be adverse to the true owner, especially when the intention to claim adversely is wanting. In the case of *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936, a case remarkable for its similarity to the case at bar—the only difference being that the land in that case had been surveyed—the court quotes with approval the following rule, with reference to title by adverse possession:

"If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseizure, but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse."

In the *Bowers v. Ledgerwood* case, *supra,* the court decided in favor of the party claiming by adverse possession. The land being surveyed, the owner must be presumed to know where his lines are, and, if his rights are encroached upon, his right of action would accrue at once. In the case at bar, Mrs. Boehrig, no doubt, claimed the land up to the fence prior to the time it was surveyed, solely upon the supposition that it was in section six; but she did not claim it afterwards, and we cannot indorse the doctrine that a person may be held to be the owner of land by reason of adverse possession, when such person did not intend to hold the land against all the world under any and all circumstances.

Judgment reversed.