[No. 5985. Decided March 10, 1906.]

E. L. LINDLEY, *Respondent*, v. K. A. JOHNSTON, *Appellant*.[1]

BOUNDARIES—ADJOINING LANDOWNERS—LOCATION OF DIVISION LINE BY MISTAKE—ADVERSE POSSESSION—LIMITATION OF ACTIONS. Where adjoining landowners, without actual survey, locate a division line and jointly build a fence thereon believing it to be the true line, and occupy, cultivate and exercise exclusive dominion over the land up to such place, acquiescing in such location for overy twenty years, it must be taken as the true boundary; and an action to recover to the true line on discovery of a mistake in the location is barred by the statute of limitations.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered August 5, 1905, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action of ejectment. Affirmed.

*R. F. & R. M. Sturdevant*, for appellant.

*Miller & Fouts*, for respondent.

1Reported in 84 Pac. 822.

17—42 WASH.

Root, J.—Appellant and respondent are the owners each of a quarter of a certain section of land in Columbia county. Appellant is a successor in interest to Joseph Crawford, who received a patent for the northwest quarter of said section, June 1, 1880; and respondent is the successor in interest of Levi Lindley, who made final proof on the southwest quarter of said section, February 18, 1885, and received patent therefor under the date of April 12, 1887. In 1881, without a surveyor, said Levi Lindley and Joseph Crawford and one S. T. Hanan, who was the owner of the northeast quarter of the same section, established a line between the north and south halves of said section, and upon this line said Lindley and Crawford erected a division fence, which for twentyfour years thereafter served as the boundary line between their farms. Each of these original owners and his successors in interest occupied, cultivated, and exercised exclusive dominion over the land on his side of said fence and up to the same, continuously from 1881 until shortly before the commencement of this suit, in 1905. Shortly before the last mentioned date, an actual survey was made, and it was found that the correct line according to the government survey showed the fence to be so incorrectly located as to leave a portion of the northwest quarter to the south of said fence, and in the inclosure occupied by respondent. Thereupon appellant moved his fence over so as to include said parcel of land, and respondent instituted this action to recover possession thereof. Judgment in the lower court was given in favor of respondent, and from this an appeal is taken.

It is urged by appellant that the location of this line by the original owners of these two tracts of land was not for the purpose of definitely locating and agreeing upon a division line, but merely to establish approximately where the line was, so that they might inclose their land by a fence. Respondent, however, urges that the circumstances were such that the statute of limitations commenced to run at that time,

and that he now has title to the strip of land in dispute by reason of adverse possession. The facts in this case are very similar to those of *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936, and we think this case is controlled by the principles enunciated in that. In said case the court, among other things, said:

"It will be observed there is no controversy as to the continued, uninterrupted occupancy by the defendant of the tract in controversy for a period of more than ten years; and the facts certainly establish that the claim and dominion of defendant over the tract was exclusive and inconsistent with any other theory than the claim of ownership, and entitled the defendant to recover in this action, unless we admit the contention urged by counsel for respondent—that the unintentional inclosure or use of a strip of land owned by another and lying next to the boundary, the location of which is not clearly known, will not constitute adverse possession."

The court then decided that such contention could not be upheld. Several times this court has quoted with approval from the case of *Caufield v. Clark,* 17 Ore. 473, 21 Pac. 443, 11 Am. St. 845, the following:

"If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseizure, but if ignorant of the boundary line, he makes a mistake in laying his fence, *making no claim, however,* to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse."

See, also, *Wilcox v. Smith,* 38 Wash. 585, 80 Pac. 803; *Suksdorf v. Humphrey,* 36 Wash. 1, 77 Pac. 1071.

It is conceded by all the authorities that, where adjoining landowners locate a division line and agree that it shall be deemed the boundary line, this will bind them, notwithstanding the same may not as a matter of fact be the correct line—assuming, of course, that said agreement is fair, conscionable, and free from fraud. In this case the trial court

found that the original owners of these two tracts of land, in establishing the line as aforesaid, agreed that it should be their boundary line. Appellant maintains that the evidence does not justify the finding of an agreement of this kind. The following extracts from a stipulation of the parties will show what took place, to wit:

"4th. That the aforesaid Joseph Crawford, Levi Lindley, and S. T. Hanan, desired to fence their aforesaid lands, and finding the government corner or half-mile stake at the northwest corner of the aforesaid southwest quarter, being also the southwest corner of the northwest quarter of said section twenty-two, and finding also the government half-mile stake or corner at the southeast corner of the northeast quarter, being also the northeast corner of the southeast quarter of said section twenty-two, they put up a pole at the point where the said half-mile stakes were found at said corners, and also put up a pole at what they deemed was near the center of said section twenty-two, and moved said pole and measured until they located what they deemed was the center of said section twenty-two, and established what in their judgment and from their measurements was the line running east and west through the center of said section twenty-two and believing said line so established to be the true boundary line between the north half of said section twenty-two, and the south half thereof; and Levi Lindley, owner of the southwest quarter of said section twenty-two, built one-half of the fence along the northern boundary of his land, established as aforesaid, and Joseph Crawford built the other half of said fence along such line, making a division fence between Crawford and Lindley along the whole of what the said Joseph Crawford, Levi Lindley and S. T. Hanan from their measurements deemed was the boundary line between the northwest quarter of section twenty-two, aforesaid, and the southwest quarter thereof.

"5th. Both Joseph Crawford and Levi Lindley believed said line was the true boundary line between the northwest quarter and the southwest quarter of said section twenty-two; but such line was never surveyed by a surveyor until it was surveyed by Ira Trescott, surveyor, mentioned in the complaint, and the said Trescott varied the line from the

one made by the said Joseph Crawford, Levi Lindley and
S. T. Hanan so that the land in dispute according to his
survey would be a part of said northwest quarter.

"6th. That such division fence was completed on or before
the year 1881, and the said Levi Lindley and said Joseph
Crawford in said year 1881 broke out and plowed their said
lands up to the fence built by them along what was deemed
the north boundary line of said southwest quarter; and their
successors have ever since farmed said land up to such fence,
including plaintiff and defendant in this action, and each
succeeding owner of the northwest quarter, aforesaid, has
made valuable improvements upon said northwest quarter
until the same is a very valuable farm, and each succeeding
owner since Levi Lindley, has made valuable improvements
upon the said southwest quarter of said section twenty-two
until the same is a very valuable farm. . . .

"8th. The disputed strip of land mentioned in plaintiff's
complaint has been in the use of Lindley and his grantor
since 1881 as aforesaid, and included within the fences which
have enclosed said southwest quarter since 1881."

In the case of *Dyer v. Eldridge,* 136 Ind. 654, 661, 36
N. E. 522, the supreme court of Indiana said:

"The law is that the location of a division boundary fence,
acquiesced in and acted upon, and the premises improved up
to the line by each, for twenty years, becomes binding as the
true line. *Richwine v. Presbyterian Church etc.,* 135 Ind.
80; *Wingler v. Simpson,* 93 Ind. 203, and cases there cited.
It is, indeed, axiomatic that acts are stronger talismans of
intentions and beliefs than are words, and to them are we
to look in settling the question of title. Guided by the evi-
dence in this case, as to the acts performed, and applying
the law thereto, the court could not have rendered a dif-
ferent judgment."

In the case of *Fisher v. Bennehoff,* 121 Ill. 426, 435, 13
N. E. 150, the supreme court of Illinois employed this lan-
guage:

"There can be but little doubt, from the evidence, that
Fisher and Mean, in 1845, had a division line run between
their respective lands, and established monuments to witness

it, and that all parties interested in the lands acquiesced in
the same until some time in 1881, and recognized it as the
true boundary line, and built and maintained fences, and cut
timber, on the faith that it was such; . . . The adop-
tion of such a line may be implied from acts and declarations,
and acquiescence therein; and after the lapse of thirty-five
years of uninterrupted acquiescence in the line, under the
circumstances, the parties and their privies should be estopped
from asserting that it is not the true division line."

In the case of *Hoffman v. White,* 90 Ala. 354, 7 South.
816, the supreme court of that state spoke as follows:

"It may now be conceded that the fence is not, and has
never been, on the true line between the lots, but that, on the
contrary, it was by mistake placed so as to inclose with lot 32
a strip seven feet in width off the west side of lot 23. Yet,
if the erroneous line was *agreed upon by the then proprietors,*
as we think the evidence shows, under the belief that it was
the correct line, and the owners of lot 32 entered on, and
took possession of lot 32, to such conventional line, and held
under a claim of right, their possession is adverse in its char-
acter to the true owner, and, if continued for ten years,
ripens into a perfect title against all the world. *Alexander
v. Wheeler,* 69 Ala. 332. It is insisted, however, that the
line between these lots was not established by agreement of
the parties. We do not concur in this view of the evidence,
but the position may be admitted, and the element of con-
tract in the location of the fence be entirely eliminated. The
fact would still remain, that the owner of lot 32 *intended to
put the fence on the true line, believed he* had done so, and
his successors for more than ten years held up to the fence,
under a claim of ownership hostile and adverse in its char-
acter. We do not doubt but that such possession, though not
justified by an understanding as to the location of the fence,
and originating in a mistake as to the true line, would, if
open, notorious, actual and continuous for the statutory
period, vest absolute title in the holder."

Under these and many other authorities to the same effect,
we think it is well established that where two adjoining land-
owners locate a division line between their farms and jointly

build a fence thereupon, believing it to be the correct line, when as a matter of fact it is not, and continue said fence as their boundary line continuously for twenty-four years, each continuously occupying, cultivating, and exercising exclusive control and dominion over the land up to said fence, that it must, in the absence of positive evidence to the contrary, be inferred that said line was located and accepted by them pursuant to an agreement that it should be considered and treated as the division line.

In the case of *Suksdorf v. Humphrey, supra,* at page 6, this court said:

"The land being surveyed, the owner must be presumed to know where his lines are, and, if his rights are encroached upon, his right of action will accrue at once."

The lands in question herein had been surveyed by the government prior to the time the division line was marked out and the fence built as hereinbefore stated. If a mistake was made in the location of said division line, the appellant, under the authorities just cited, would be presumed to have known the fact within a reasonable length of time; at least, it was within his power to have so done. Both parties having acquiesced in the line for twenty-four years, it would seem against public policy to say that the statute of limitations should not be available.

The judgment of the lower court is affirmed.

MOUNT, C. J., DUNBAR, CROW, HADLEY, and FULLERTON, JJ., concur.