BUNDE v. FINLEY.

ADVERSE POSSESSION—INSTRUCTIONS—TACKING SUCCESSIVE POSSES-
SIONS NOT PERMISSIBLE UNLESS RIGHTS CONVEYED.

> Where defendants claimed title to a strip of land on the
> boundary between them and plaintiff by acquiescence of
> plaintiff in the line as fixed by an old fence and also by
> adverse possession, and they had been in possession of the
> premises for less than 15 years, the court, in charging
> the jury on the question of adverse possession, was in
> error in refusing a requested instruction that defendants
> could not tack on to their claim to the disputed strip any
> claim made by any prior owner not mentioned or con-
> templated in the deed or conveyance to them.   WIEST,
> C. J., and McDONALD and MOORE, JJ., dissenting.

Error to Calhoun; North (Walter H.), J.   Sub-
mitted June 5, 1923.   (Docket No. 9.)   Decided
October 26, 1923.

Ejectment by Paul Bunde against Edward Finley
and another.   Judgment for defendants.   Plaintiff
brings error.   Reversed.

*Howard W. Cavanagh,* for appellant.
*Adrian F. Cooper,* for appellees.

MOORE, J. (*dissenting*).   The plaintiff is the owner
of the record title to the west half of the northwest
quarter of section 21, town 2 south, of range 4 west,
and the defendants are the owners of the record title
to the east half of the northwest quarter of said
section.   This suit is in ejectment to recover a strip
of land 29 feet wide at one end, and 29 feet, 8 inches
wide at the other end, and 160 rods long, which plain-

On unbroken continuity as essential element of adverse pos-
session, see note in 15 L. R. A. (N. S.) 1202.
On parol transfer of possession as basis of tacking, see note in
35 L. R. A. (N. S.) 498.

tiff claims is part of his farm. The claim of the plaintiff is supported by a survey made by one Chase in the years 1915 and 1917.

It is the claim of the defendants that one Rufus Burr acquired the land now owned by the plaintiff from the government, and that Gardner and Reuben Davis acquired the land owned by the defendants from the government, and that a rail fence was built by the first settlers as a dividing line between the two farms, 70 years or more ago, and that the present line fence is on the same line as the first fence and that this line was established from known government monuments and stakes. There is on the line a private cemetery established by Mr. Davis 70 years ago, and the present line fence runs along the west side of this cemetery. The new line run by Mr. Chase, and which plaintiff seeks to have established as the line, would put the greater part of this cemetery on what was formerly the Rufus Burr farm, which is the farm now owned by the plaintiff. The trial judge gave a charge in which he evidently undertook to cover every phase of the issue involved. It covers more than ten pages of the printed record. The jury returned a verdict in favor of the defendants. The case is brought here by writ of error.

Counsel has many assignments of error; some of them relate to the admission of testimony. Counsel preferred several requests to charge. One of them reads:

"I charge you further that the defendants herein cannot tack on to their claim to the right to the possession of any surplus here by any claim made by any prior owner and not mentioned or contemplated in a deed or conveyance to them. In other words, their right to possession is adverse and depends wholly upon their own holding open, notorious, actual, visible, hostile and continuous possession for fifteen years themselves and not from any prior grantor."

The court did not give this request. We now quote from the brief of counsel:

"The only error assigned in this case upon which it is deemed necessary to recite any law to sustain the position of the plaintiff is the one question arising out of the adverse possession claim by the defendants.

"It is the claim of the plaintiff that the circumstances in the case are sufficient to establish the fact that the jury relied solely upon the question of adverse possession in determining this case against the plaintiff and as he claimed it was erroneously submitted to the jury, not only in the charge of the court but also in the rulings made by the court.

"One of the first cases in which this question arose before this court was in *Sheldon* v. *Railroad Co.*, 161 Mich. 503, and where this rule was laid down:

"'Where the grantee relies upon his deed to show privity of estate, he cannot have the benefit of the grantor's possession of lands which are not conveyed by the deed.'"

Counsel also cites *Lake Shore, etc., R. Co.* v. *Sterling*, 189 Mich. 366; *Wilhelm* v. *Herron*, 211 Mich. 339, and *Robertson* v. *Boylan*, 214 Mich. 27.

A reference to these cases will show them easily distinguishable from the instant case. In two of them the deed relied upon expressly excluded the disputed strip of land. In the instant case it is claimed the disputed strip of land is part of the land described in the defendants' deed and has been so recognized for more than 50 years, and that the holdings of the defendants and their grantors have been adverse to the claim now made by the plaintiff.

We quote a little of the testimony:

"My full name is Charles B. Burr and I am 76 years old. I know this property in question, I mean the farm belonging to the plaintiff Mr. Bunde and the farm belonging to Mr. Finley, section 21. I have been acquainted with those two farms as long as I can remember. I lived on the Bunde farm. I am the son of Rufus Burr who took that up from the government. I was born on that farm on June 28,

1844.    I lived there until—I think it is 16 or 17 years
since I left the farm.    I lived there approximately
half a century, about sixty years.    I know where the
line was supposed to be between the plaintiff and the
land east of it, where it was during the time as long
as I can remember.

"*Q.* State whether or not it was fenced on the same
line?    *    *    *

"*A.* I cannot remember when there was not a fence
there and I lived there as I say up until 16 or 17 years
ago.    It was a rail fence.    The rail fence extended
clear along between us from one end of the farm to
the other.    There was a rail fence for half a mile.
That fence did not decay.    It was not rebuilt, not the
south end.    The south half was not rebuilt but at the
north end there was a stone wall built.    At the south
end was a rail fence and never was replaced by any
other fence.    The stone fence was at the north half
of the line between Davis and me.    I couldn't tell you
when the stone fence was built, I think a part of it
was forty years ago.    It is built up by stone laid up
to turn stock.    That stone fence at the north end, a
portion of it was there when father was alive.    I
have been out there and looked at that fence not long
ago and went over the whole line between these two
farms, between Bunde and Finley.    I saw the stone
fence on the north half as it is now.    The fence is
now on the same line it was 35 years ago.    On the
south half there is a rail fence.    There is an old
cemetery there that was on the Finley land, came
right up to Bunde's line.    That is on the Finley
land, came right up to Bunde's line.    That is on the
Finley land, yes.    Mr. Davis established a cemetery
there.    Reuben Davis did.    That was probably 70
years ago that it was established there.    That
cemetery was all on the Davis farm.    No part of it
was on my father's farm.

"*Q.* Now where did the stone fence come with refer-
ence to the cemetery—anywhere along near the
cemetery?

"*A.* No.    It was a rail fence along that line, the
south end—the south half of the line between the two
farms was a rail fence.    It was repaired and rebuilt
from time to time.    It was always built along the
same line.

"*Q.* Is the fence that now takes place built on the same line that the old rail fence was?

"*A.* Well, I cannot tell you what they have done there of late years. The old rail fence is there now what there is left of it on the line that was established as long ago as I can remember.

"*Q.* Did you overhear your father or did you during the period that you owned and lived on that, ever make a claim of any land lying east of that stone and rail fence?

"*A.* No, sir.

"*Mr. Cavanagh:* I object to what he heard his father do. His father is not living.

"*The Court:* I think his answer may stand. I suppose he should qualify his answer by saying that his father did not so far as he knows.

"*Mr. Cooper:* Yes.

"*Q.* Did you ever hear any claim of any claim or dispute during the last fifty years that you lived on that place that that line was not in the right place?

"*A.* No, I never heard any claims at all.

"*Q.* And so far as you know did both the owners, both the Davises on the one side and the Burrs on the other, consider that and treat that as the true line between them?

"*A.* Yes."

There was much other testimony to the same effect.

We do not find any testimony in direct conflict with this testimony, though the plaintiff and one other say that what the witnesses call a line fence was not a fence. All of the disputed questions were fairly submitted to the jury. We think the charge of the court was justified by *Greene* v. *Anglemire,* 77 Mich. 168; *Hoffman* v. *City of Port Huron,* 102 Mich. 417; *Marion* v. *Balsley,* 195 Mich. 54.

The judgment should be affirmed, with costs to the appellee.

WIEST, C. J. (*concurring in affirmance*). I concur in the opinion prepared by Mr. Justice MOORE. The case at bar is not one of tacking added land to the premises deeded defendants, but one of establishment,

by long acquiescence, of the dividing line between lands owned by the parties. The boundary line of the property of defendants runs where their grantors claimed during their occupancy and where they maintained the same by possession for the period and under circumstances which in law composed all question as to the boundary.

The circuit judge might well have omitted all reference to adverse possession, but the question of such possession was necessarily so linked with the question of settlement of the boundary line by acquiescence as to not call for reversal. I do not believe that the case should be sent back for a mere sifting of the blending elements of adverse·possession and possession to a line by long acquiescence. The distinction is one of theory and not of substance.

McDONALD, J., concurred with WIEST, C. J.

FELLOWS, J. The request preferred by plaintiff's counsel and quoted by my Brother MOORE is in accordance with the rule announced in the majority opinion in *Sheldon* v. *Railroad Co.*, 161 Mich. 503, and followed in *Lake Shore, etc., R. Co.* v. *Sterling*, 189 Mich. 366; *Wilhelm* v. *Herron*, 211 Mich. 339; *Robertson* v. *Boylan*, 214 Mich. 27. The charge of the court entirely ignored this rule. I am not prepared to agree that these cases were wrongly decided. They announce a rule of property applicable to the instant case and should be followed under the doctrine of *stare decisis*. Beyond that, they adopt a correct rule in my judgment. Defendants acquired title to the land in October, 1917, from the father of defendant Edward Finley who had owned the property for eleven years, during which time there was almost a constant dispute as to where the true line was. Some time before that, at least portions of the land on both sides of the line were owned by the same persons. There

is testimony in the case that the present fence erected by defendants is not on the line of the old fence, that the old rail fence was about five feet east of the present fence. There is also testimony in the case that the old fence had been moved from its original location. Plaintiff introduced record testimony tending to establish his record title and testimony of a surveyor tending to establish the true line. To meet this case defendants introduced testimony tending to show acquiescence in the line fixed by the old fence and also to establish adverse possession. On the question of establishing the line by acquiescence the trial court correctly charged the jury:

"Where a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for fifteen years the boundary line ought not to be disturbed even if there were some variance from the true line, and a long established fence is better evidence of actual boundaries settled by practical location than a survey made after the monuments of the original survey have disappeared. And where a boundary line has been recognized and acquiesced in for fifteen years it would not be disturbed by reason of new surveys."

The trial judge also submitted to the jury the question of adverse possession in a charge which entirely eliminated the doctrine of tacking and refused to give the quoted request or its equivalent. If the question of adverse possession was one for the jury, and this is giving defendants' claim its most favorable construction except as adverse possession bore on the question of acquiescence, the preferred request should have been given. The refusal to give it in my judgment constituted reversible error for which the case should be reversed and a new trial granted, with costs to plaintiff.

CLARK, BIRD, SHARPE, and STEERE, JJ., concurred with FELLOWS, J.