(No. 5164.   June 10, 1929.)

HOY KESLER, Appellant, v. GEORGE W. ELLIS and
    SUSANNAH M. ELLIS, Husband and Wife, Respond-
    ents.

[278 Pac. 366.]

C. E. Melvin, for Appellant.

D. K. McLean, for Respondents.

VARIAN, J.—This is an action to quiet title and involves a disputed boundary. The parties are coterminous owners of lands situate in section 26, township 9 south, range 42, E. B. M., in Caribou county. Plaintiff (appellant) brought this action to quiet title to the following land, situate in Caribou county, to wit: All that portion of the south half of the northwest quarter and the west half of the northeast quarter of section 26, township 9 south, range 42 east of the Boise Meridian, "lying and being between the south line of said premises and a certain fence erected thereon and north of said south line and running in an easterly and westerly direction, comprising about one and one-half acres, more or less." Defendants (respondents) answered, setting up ownership in the land lying immediately south, de-

nying the ownership of plaintiff in the strip in controversy, and by cross-complaint set up title thereto in themselves. The cause was tried to the court without a jury, resulting in a decree in favor of defendants (respondents).

At all times mentioned in the evidence, the lands of each party were surveyed lands. George Shuler entered into possession, of appellant's lands in 1914, and patent under the Homestead Act issued to him on August 19, 1919. Shuler conveyed to one Webb in March, 1924, who on November 3, 1924, conveyed to appellant Hoy Kesler, who has been in possession thereof from said date.

Defendants have been in possession of the northwest quarter of the southwest quarter of section 26, township 9 south, range 42, E. B. M., since April, 1910, and the northeast quarter of the southwest quarter and the northwest quarter of the southeast quarter of said section since December 26, 1919. The northwest quarter of the southwest quarter of said section was patented in 1900 by a predecessor in interest of defendants. The remaining eighty acres was patented prior to December, 1919, to one Joseph Kennedy, who conveyed to defendants on December 26, 1919. The lands of both parties are inclosed by a fence.

The record discloses that Shuler, patentee of plaintiff's land, and Kennedy, patentee of the easterly eighty acres immediately adjoining it on the south, now owned by defendants, while in possession of the said mentioned tracts, procured the division line to be run by a surveyor in 1916, and they reset an existing fence between their properties upon the boundary line then fixed by the surveyor; that both Shuler and Kennedy participated in the building of the division fence, which was wholly completed in 1917; that thereafter each occupied, cultivated and farmed his land up to the fence each year continuously for more than eight years, without objection from any source. The forty-acre tract owned by defendants lying immediately south of the westernmost forty, was patented in 1900, and acquired by defendants in 1910, who have ever since been in possession thereof. The division fence was erected in 1916 or 1917, and

was recognized as the true boundary line by Shuler, patentee as aforesaid, and defendants, until Shuler conveyed to Webb in 1924, and by plaintiff until immediately prior to the commencement of this action, each occupying and farming their respective tracts up to said fence continuously each year for more than five successive years. No dispute existed as to the present location of the boundary line until just prior to the commencement of the present action by appellant. All of the lands of defendants were described on the tax-roll by government subdivisions, as described in the conveyances to them, and they have paid the taxes upon said lands, so assessed each year continuously for five years and down to the commencement of the present action. The fence remains upon the line on which it was constructed in 1916, and has not been moved. Both parties admit that the fence is not on the true line, but that the fence is north of the true line, and there is nothing in the record to show the exact location of the true boundary line, except that the pleading admits that such true boundary is south of the division fence.

As to the remainder of the boundary line, there is no direct evidence of an express agreement to establish the fence, erected in 1916 or 1917, as the true boundary between the southwest quarter of the northwest quarter and the northwest quarter of the southwest quarter of said section 26. The testimony, however, discloses that its location was clearly acquiesced in by Shuler, occupant and later patentee of the first mentioned subdivision (and later by his successors in interest), and by defendant, who then owned the fee in the northwest quarter of the southwest quarter of said section, for nearly ten years prior to the institution of the present action. Apparently, though the record is obscure on this point, this line was established by Surveyor Wilson at the time he ran the line between the lands of Shuler and Kennedy, extending that line to the west line of said section 26. We think the case falls within the general rule that where "there is no express agreement as to the location of the boundary line, adjoining proprietors

744

cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties.'' (1 Tiffany on Real Property, 2d ed., sec. 295, p. 999; 4 R. C. L., p. 129; 9 C. J., p. 232; *O'Malley v. Jones,* 46 Ida. 137, 266 Pac. 797.) While the authorities are hopelessly confused and generally uncertain as to the time the acquiescence as to the location of the boundary line should continue in order to satisfy the rule, it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitation in cases of adverse possession. (4 Thompson on Real Property, sec. 3112, p. 205; *Wheatley v. San Pedro, L. A. & S. L. R. Co.,* 169 Cal. 505, 147 Pac. 135; *Board of Trustees v. Miller,* 54 Cal. App. 102, 201 Pac. 952; *O'Donnell v. Penney,* 17 R. I. 164, 20 Atl. 305 (306); *Hellman v. Roe,* 275 Ill. 158, 113 N. E. 989 (991); *Miller v. Mills County,* 111 Iowa, 654, 82 N. W. 1038 (1040); *Bradley v. Burkhart,* 139 Iowa, 323, 130 Am. St. 328, 115 N. W. 597; *Ivey v. Cowart,* 124 Ga. 159, 110 Am. St. 160, 52 S. E. 436; *Hay v. Pierce,* 144 Ky. 768, 139 S. W. 941; *Bunde v. Finley,* 224 Mich. 634, 195 N. W. 425; *Carstensen v. Brown,* 32 Wyo. 491, 236 Pac. 517; *Adams v. Child,* 28 Nev. 169, 88 Pac. 1087; *Lehman v. Smith,* 40 S. D. 556, 168 N. W. 857.)

As to that portion of the boundary line adjoining on the north the eighty acres patented to Kennedy, it is apparent that neither Kennedy nor Shuler knew the exact location of the true boundary line, and therefore procured Wilson to survey the line. Each constructed a portion of the division fence, and Shuler testified that they then agreed that the fence was the true line. By occupying, cultivating, pasturing and farming the lands on each side of the fence up to the line so established, for more than eight years, the parties acquiesced in their location of the division fence. On this phase, the case comes within the rule announced by those authorities holding that such an agreement, in the absence of fraud or misrepresentation, though oral, followed by acquiescence, operates to establish the true boundary,

although the fence is in fact not upon the true boundary line between the lands of the adjoining owners. (9 C. J., pp. 230, 232, 242; 1 Tiffany on Real Property, 2d ed., sec. 294, p. 996; 4 Cal. Jur., p. 435, sec. 59; *Lindley v. Johnston*, 42 Wash. 257, 84 Pac. 822; *Price v. De Reyes*, 161 Cal. 484, 119 Pac. 893; *Wood v. Bapp*, 41 S. D. 195, 169 N. W. 518.)

One in the occupancy of public lands agreeing upon a particular boundary line between the lands occupied by him and those occupied by another is bound by his agreement after he acquires title from the United States to the land so occupied by him (*Jordan v. Deaton*, 23 Ark. 704; *Wood v. Bapp, supra*), and the acquiescence of an adjoining owner is binding upon his successors in interest to the same extent as he is bound thereby. (1 Tiffany on Real Property, 2d ed., sec. 295, p. 1001; *Tanner v. Stratton*, 44 Utah, 253, 139 Pac. 940.)

Appellant contends that the defendants failed to show payment of taxes upon the strip lying north of the boundary line and south of the division fence. The evidence discloses that the defendants paid taxes upon the property as described in the conveyances to them. This court said in *O'Malley v. Jones, supra*:

"Let it be conceded that both parties have paid all taxes assessed upon their holdings as conveyed to them by their respective conveyances. A finding as to an agreed boundary has the effect of extending and diminishing the limits of the deeds to include and exclude the parcel of land in dispute. Under such circumstances, the payment of taxes assessed in this manner is a payment on the land in the possession of the parties" (citing *Price v. De Reyes, supra*).

Judgment affirmed, with costs to respondents.

Budge, C. J., Givens and Wm. E. Lee, JJ., and Baker, D. J., concur.