GEORGE T. QUICK

*v.*

LOUISA NITSCHELM *et al.*

*Filed at Ottawa October 31, 1891.*

1. BOUNDARY—*division lines—settled by parol agreement of adjoining land owners.* The owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession and the making of improvements, will be binding and conclusive, and can not afterward be disputed.

2. But such an agreement must be clearly proven, and can not be implied from slight acts of the parties, though it may sometimes be implied from their unequivocal acts. There must have been a dispute as to the boundary lines, and the parties acting must have had authority to do so.

3. SAME—*power of agent to establish.* Power in an agent to sell two or more adjoining lots does not involve and imply authority to make a parol agreement as to the boundaries between the lots. A power to sell does not authorize a partition of the property.

4. So one acting as agent of a non-resident owner of lots to sell the same, in effecting a sale of a lot represented that a fence on an adjoining lot held by a third person constituted the eastern boundary of the lot sold, in pursuance of which representation the purchaser, in fencing her lot on the west, encroached eleven feet on the lot west of the one bought, which her grantor owned. At that time there was no dispute as to the location of the lots, or their boundaries or division lines, nor was it shown that the agent had any authority to do anything more than to sell, or had knowledge that the fence first above named was not on the line of such lot. It was *held*, that there was no estoppel upon a subsequent purchaser of the lot on the west, to prevent him from showing the true line between the two lots.

5. SAME—*estoppel in pais.* Estoppels *in pais*, affecting permanent interests in land, are available only in courts of equity; and if one

party makes representations, either in words or conduct, which induce the other party to accept a particular line as the correct boundary, such representations can not be regarded as constituting an estoppel *in pais*, unless the party making them had full knowledge of all the facts, or had been guilty of gross negligence in failing to learn such facts.

6. ESTOPPEL—*privies of grantors—grantees*. Privies of a grantor who is estopped in respect of the boundaries of the land conveyed, will not be estopped in respect thereto if they are subsequent purchasers for value without any notice that their grantor is estopped. To make an estoppel binding on grantees it must be affirmatively shown that they had notice of the equities against their grantor, out of which the estoppel is claimed to have arisen.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

Messrs. KELLOGG & CAMERON, for the appellant:

A disputed boundary may be settled by the parties by a parol agreement, when followed by possession. But the evidence of the establishing of the adopted line must be clear, positive and unequivocal. *McNamara* v. *Seaton*, 82 Ill. 500.

An estoppel *in pais*, affecting title to real estate, is available only in a court of equity. *Winslow* v. *Cooper*, 104 Ill. 239.

Possession must be adverse, or the limitation will not run. *Dow* v. *McKenney*, 64 Me. 138; *Howard* v. *Reedy*, 29 Ga. 154; *Major's Heirs* v. *Rice*, 57 Mo. 384; *Brown* v. *Cockrell*, 33 Ala. 45.

As to the question of estoppel, see *McAfferty* v. *Conover*, 7 Ohio St. 99; *Bobo* v. *Richmond*, 25 id. 115; *White* v. *Hapeman*, 43 Mich. 267; *Hazy* v. *Detweiler*, 35 Pa. St. 409.

Messrs. SHEEN & LOVETT, for the appellees:

The evidence failed to show the boundary line. In matters of boundary, an estoppel has been applied in actions of ejectment. *Fisher* v. *Bennehoff*, 121 Ill. 426; *Bloomington* v. *Cemetery*, 126 id. 221.

An agent may be constituted by parol to sell real estate, and if followed by deed, his acts will be obligatory. *Doty* v. *Wilder*, 15 Ill. 407; *Johnson* v. *Dodge*, 17 id. 433.

The representations of an agent are the representations of the principal, as part of the contract. Paley on Agency, 255; *Prickett* v. *Madison County*, 14 Bradw. 454.

Van Culin could make an oral agreement concerning boundary line, which, if possession is taken and improvements made in conformity with the agreement, is binding on his grantees. *Crowell* v. *Maughs*, 2 Gilm. 423; *Yates* v. *Shaw*, 24 Ill. 367; *Culler* v. *Callison*, 72 id. 113.

If the agent pointed out what he would sell, and did not give what defendant was offered, such act is binding on the principal, who received defendant's money for the tract pointed out. *Noble* v. *Cunningham*, 74 Ill. 53; *Hopkins* v. *Snedaker*, 71 id. 450.

Van Culin and his grantees can not rescind his sale of fifty-seven feet west of the fence and affirm it as to only thirty-seven feet, neither can he compel defendant to take property that he did not try to sell or she want to buy. *Henderson* v. *Cummings*, 44 Ill. 325; *Kinnear* v. *Mackey*, 85 id. 96; *Hemstreet* v. *Burdick*, 90 id. 444.

An agent authorized to sell land may warrant against claims of his principal's grantees. *Ward* v. *Bartholomew*, 6 Pick. 409; *Blackman* v. *Charleston*, 42 N. H. 125.

Only the parties to a contract can allege its invalidity because not in writing. *Kelly* v. *Kendall*, 118 Ill. 650.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of ejectment begun on August 1, 1888, in the Circuit Court of Peoria County by the appellant against the appellee, Louisa Nitschelm, owner, and the appellee, Butler, tenant, to recover possession of a strip of ground on the north east side of Lot 7 in Block 123 in Parrish's Addition to the City of Peoria, laid out on part of N. E. ¼ of section 3, Town 8, N. R. 8, E. of 4th P. M., and adjoining Lot 8 in said

Block. The following diagram shows the location of the property in dispute:

It is not disputed that plaintiff below owns lot 7 in block 123, and that Mrs. Nitschelm, lessor of the defendant Butler, is the owner of Lot 8 in block 123. The dispute is as to the proper location of the boundary line between lots 7 and 8 in block 123. Although the lots and streets upon the diagram lie northeast and southwest of each other, the directions will be here spoken of, for convenience, as being east and west and north and south. The plaintiff in his declaration describes a strip of ground twenty feet wide, but we do not understand him to claim that the strip enclosed by the defendant had a greater width than eleven feet. He says in his testimony: "Mrs. Nitschelm's fence was not down twenty feet on me on the northeasterly side of lot 7; * * * Mrs. Nitschelm occupied about eleven feet of my lot," etc.

We think that the strip of ground, eleven feet wide, which is in dispute between the parties, is a part of lot 7, and not of lot 8; in other words, that the defendant, instead of confining her possession to the land lying east of the east line of lot 7, has infringed upon the east part of lot 7 to the extent of at least eleven feet. The evidence, including the various plats and subdivisions to be found in the record, is so complicated that we cannot do more than indicate in a general way the reasons for our conclusion.

In 1851, John Birket owned the land which now includes Birket's Addition, Parrish's Addition, Randall's Addition, and Randall's lot in Peoria. April 24, 1856, Birket made a plat, called Birket's Addition, which includes the above blocks 126 and 125, the latter lying between Jefferson and Adams Streets on the north and south, and Mary and Cornhill Streets on the west and east. In Birket's Addition, according to said plat as executed and recorded, Mary, Jefferson, Cornhill and Adams Streets are 80 feet wide; the alley between Jefferson and Adams Streets is 18 feet wide; the lots in blocks 125 and 126 are 57 feet wide and $177\frac{1}{2}$ feet deep; a stone is indicated as

being located at the northeast corner of lot 12 in block 125 on Cornhill Street.

On August 25, 1857, one Joseph W. Parrish, by *mesne* conveyances from said Birket, became the owner of $2\frac{26}{100}$ acres of land, and on August 25, 1857, made a plat of the same, called Parrish's Addition, which includes, as we understand it, the above lots 1, 2, 11 and 12 in block 122, and lots 5, 6, 7 and 8 in block 123, the two last being the lots of plaintiff and defendant herein. In Parrish's Addition, according to said plat as executed and recorded, lots 5, 6, 7 and 8 in block 123 are each 57 feet wide and $177\frac{1}{2}$ feet deep; Caroline Street is 70 feet wide between Jefferson and Adams Streets; the alley in block 123 is 18 feet wide; Caroline and Mary Streets are at right angles to Adams Street, and a stone is indicated as being at the northeast corner of lot 1 in block 122.

On August 18, 1854, said Birket conveyed to Ellis Randall the land covered by Randall's Addition and Randall's lot. Randall's Addition includes block 121 lying north of block 123, and the plat shows that a stone was placed at the southeast corner of block 121. Randall's lot, as we understand it, consists of the land in block 123, lying east of lots 5 and 8 therein, as noted on the above diagram, and between said lots on the west and Mary Street on the east, and between Adams and Jefferson Streets on the south and north. Randall's lot seems never to have been platted, but the portion thereof south of the alley was divided into 4 lots, each 57 feet wide and $177\frac{1}{2}$ feet deep, which were sold to different parties; and of the portion north of the alley, a lot, 57 feet wide and $177\frac{1}{2}$ feet deep, lying just east of lot 5 (and which may be called lot 4) was sold to one Cross. A stone was placed by the surveyor at the northeast corner of the portion of the lot south of the alley, being at the southwest corner of the alley and Mary Street, as indicated on the plat of Parrish's Addition.

The three additions above named were all surveyed and platted within a period of about three years by one surveyor,

named Braley, who located the stones, which have been mentioned, in order that future surveys might be made therefrom. But the stones thus set by the surveyor in said blocks 121, 122 and 123 have all disappeared.

August 25, 1857, Parrish conveyed lots 7 and 8 in Block 123 to Robert M. Clark, who conveyed them on July 31, 1863, to Samuel W. Van Culin. Van Culin is the common source of the titles of both the plaintiff and defendant. By deed, dated March 1, 1877, and recorded April 10, 1877, Van Culin conveyed Lot 8 in Block 123 in Parrish's Addition to the City of Peoria to the defendant Louisa Nitschelm; by deed, dated October 22, 1880, and recorded November 16, 1880, he conveyed lot 7 in said block 123 to Ann Bond; and by deed, dated June 29, 1887, and recorded the same day, Ann Bond and her husband conveyed said lot 7 to the plaintiff, George T. Quick.

By deed, dated April 21, 1873, Willard M. Randall, one of the heirs of Ellis Randall, then deceased, conveyed to Alfred L. Archambeau "Lot 9 in Randall's Lot," describing the same as "Commencing on Adams Street 171 feet southwest from Mary Street, thence along Adams Street southwest 57 feet, thence at right angles with Adams Street $177\frac{1}{2}$ feet towards Jefferson Street, thence towards Mary Street, parallel with Adams Street 57 feet, thence parallel with Mary Street $177\frac{1}{2}$ feet to the place of beginning." On November 17, 1877, the other heirs of Ellis Randall conveyed to Archambeau the same property. From the recitals in the Archambeau deed, it appears that the southeast corner of lot 9, as shown in block 123 on the above diagram, is 171 feet west of the corner of Mary and Adams Streets, and that the southwest corner of said lot 9 is 228 feet west of said corner. It is stipulated and agreed between the parties, that said lot 9 adjoins defendant's lot 8 on the northeast (or east) side of said lot 8, and that the Additions herein described were platted as above indicated,

17—139 ILL.

and that the copy of the plat of Parrish's Addition introduced in evidence, from which the above diagram is taken, is correct.

It follows from what has been said, that the southwest corner of plaintiff's lot 7 at the corner of Adams and Caroline Streets is 342 feet west from the southeast corner of block 123 at the corner of Mary and Adams Streets, and that the north and south lines of block 123 are each 342 feet long.

The stone, placed by Braley at the northeast corner of lot 12 in Block 125, was found there in 1888 by two surveyors and John C. Birket, a son of John Birket. John C. Birket swears, that he took part with his father and Braley, the county surveyor, in laying out Birket's Addition, and that he helped to place the stone on Cornhill Street at the northeast corner of said lot, and that the same stone was there at the time of the trial, and was used as the basis of a survey made in 1877. The proof shows that surveys were made from this stone as a starting point in 1888.

In 1866, or about that time, William Cross and Agnes Cross, his wife, bought the third lot east from the corner of Caroline and Jefferson Streets in block 123, marked 4 on the diagram, fronting north on Jefferson Street and located in the rear of the Archambeau lot numbered 9. Fences were built shortly thereafter enclosing said lot 4, and at a later date a fence was built on the west side of lot 6 in block 123 along the east side of Caroline Street. A fence was also put up along Caroline Street on the west side of lot 7 after Mrs. Bond purchased lot 7. Cross says that he set his fences at random without any survey.

When the surveys were made in 1888, a line, beginning at the stone located at the northeast corner of lot 12 in block 125, was run westward along the alley 342 feet to Mary Street, thence westward 80 feet across Mary Street to the alley in block 123, thence along the alley 342 feet westward towards Caroline Street, and the latter point, being at the recorded distance of 764 feet from the surveyor's stone, was found to

be eleven feet east of the fence on the east side of Caroline Street, showing that the fence which had been intended to run along the west line of lot 6 had, as matter of fact, been built eleven feet to the westward of that line, and in Caroline Street. Another line, run by one of the surveyors from an old stake at the southwest corner of block 119 in Randall's Addition, north of block 121, and extended southward along the east side of Caroline street to the alley in block 123, showed the fence there to be 11 or 12 feet west of the southwest corner of lot 6. The surveys thus made also showed, that the fences, running north and south and enclosing the Cross lot numbered 4, were 11 or 11½ feet west of the recorded lines of the lot, as shown on the plat, at the alley. It appears from the evidence, that one or more of the latter fences were moved to the eastward towards Mary Street after the surveys of 1888. A line run southward from the stone on Cornhill Street to the southeast corner of lot 12 in block 125 on Adams Street, thence westward 342 feet to Mary Street, thence 80 feet across the latter street to the southeast corner of block 123, thence westward along the north line of Adams Street to the southwest corner of plaintiff's lot 7, showed the latter corner to be about 14 feet east of the fence that had been on the west side of lot 7. The same thing was shown by the extension of the other line on Caroline Street southward from the alley to Adams Street. One of the surveys of 1888 was made by the City Surveyor of Peoria, and in accordance therewith, plaintiff was required to move his west fence some 14 feet to the eastward.

We are satisfied from the evidence, that the fence on the west side of Cross' lot numbered 4, was, before its removal in 1888, at least 11 feet further westward where it joined the alley, than it ought to have been according to the lines as shown on the recorded plat; that is to say, at the alley it was eleven feet to the west of the east line of lot 5 in block 123.

When Archambeau bought his lot 9 in 1873, he had it surveyed, but the surveyor simply run his lines southward from the alley on a line with the fences of Cross' lot in the rear of lot 9; and Archambeau located his west fence on a line with the west fence of Cross as extended southward from the alley to Adams Street. As the west fence of Cross was 11 feet to the west of the east line of lot 5, so the west fence of Archambeau, built in 1873, being on a line with the west fence of Cross, was 11 feet to the west of the east line of lot 8 now owned by the defendant.

In 1877, when the defendant, Nitschelm, bought lot 8, she took possession of a piece of ground fronting 57 feet on Adams Street and running back the same width to the alley, and lying west of Archambeau's west fence. Consequently, her west fence, instead of being on the true boundary line between lots 8 and 7, was eleven feet west of the east line of lot 7. She accepted the west fence of Archambeau as being on the boundary line between lots 8 and 9, whereas it was eleven feet too far to the west of that line. It follows that defendant's tenant at the beginning of this suit was in possession of at least as much as the east eleven feet of plaintiff's lot.

But the defendant claims that she is entitled to the benefit of what is alleged to be an estoppel *in pais.* She states that, before she received her deed, she went with her husband to the premises, and there met a man who showed them the property, and told them there were 57 feet in each lot. This man, according to her testimony, made no measurements and set no stakes, so far as she saw or remembers, but told them the lot they were buying was an inside lot, and indicated that the dividing line between lots 7 and 8 would be 57 feet from Archambeau's fence, and pointed it out, stepping it off and showing it to them, and "told them to take 57 feet from Archambeau's fence west in building their fence." The defendant's husband is dead, and she is the only witness of what occurred upon this occasion. She does not know the name

of the man she then saw, but says that he was looking after the property and had it for sale, and that they sent off the deed for Van Culin to sign. Van Culin, the owner at that time, of lots 7 and 8, lived in Philadelphia, and was not in Peoria, when Mrs. Nitschelm bought her lot. After the occurrence thus referred to, the deed, conveying to her lot 8 in block 123 in Parrish's Addition, and dated and recorded as above set forth, was executed by Van Culin in Philadelphia, and forwarded to the defendant at Peoria.

It is claimed on the part of the appellee, Nitschelm, that the foregoing facts amounted to an agreement between herself and an agent of Van Culin, that the boundary line between lots 7 and 8 should be 57 feet west from Archambeau's fence, and that appellant, holding under Van Culin through the latter's subsequent grantee, Mrs. Bond, is estopped from questioning the location of her west fence.

It is well settled in this State, that the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession and the making of improvements, will be binding and conclusive, and cannot afterwards be disputed. But such an agreement must be clearly proven, and cannot be inferred from slight acts of the parties, although it may sometimes be implied from their unequivocal acts. (*City of Bloomington* v. *Cemetery Association*, 126 Ill. 221.) In most of the cases where the rule has been held to apply, there has been no question as to the authority of the parties, making such a verbal agreement, to enter into it; there has been a dispute, or, at any rate, an uncertainty as to the true location of the boundary line, so that the agreement operates as a settlement of what was unsettled; both parties have taken possession of their respective tracts or lots after making the agreement, and have cultivated, or otherwise improved, the same up to the line agreed upon; such possession has been continued for a considerable length of time; though the Statute

of Limitations may not have run; the grantees holding under the parties to the agreement, where they have been purchasers for value, have generally had notice of it, either actually, or by reason of the long continued possession of their grantors, and the recognition by the latter, for a considerable period of time, of the boundary line agreed upon.  If the facts are not sufficient to show an actual agreement as to a boundary line, even though they amount to an estoppel *in pais*, it is to be observed that estoppels *in pais* affecting permanent interests in land can only be made available in a court of equity; and, if one party makes representations, either in words or conduct, which induce the other party to accept a particular line as the correct boundary, such representations cannot be regarded as constituting an estoppel *in pais*, unless the party making them had full knowledge of all the facts, or had been guilty of gross negligence in failing to learn such facts.

An application of these rules to the facts disclosed by the evidence in the case at bar shows, that there is no such estoppel *in pais* in favor of locating the boundary line between lots 7 and 8 eleven feet west of the east line of lot 7, as can be successfully pleaded against the plaintiff in this action of ejectment.  If the person, whom Mrs. Nitschelm saw at the lot, was such an agent of Van Culin as was authorized to make the agreement or representation which he is alleged to have made, the burden of proof was on the defendants to show that there was an estoppel *in pais;* and the essential elements of such an estoppel are wanting.

It is not shown, that the alleged agent had any knowledge of the mistake, which Archambeau had made in the location of his west line.  For aught that appears, he may have believed that such west line was correctly located according to the original survey and the plat thereof.  There is no proof of any dispute or uncertainty as to the correct location of the east line of lot 8 as between Van Culin and Archambeau, or as to the location of the east line of lot 7 as between Van Culin

and the defendant. If the supposed agent honestly believed that the west line of lot 9 was correctly located, it cannot be said that he intentionally deceived or misled the defendant by anything he said or did. There is nothing to show that Van-Culin was guilty of any negligence in failing to ascertain the inaccuracy of the survey, which Archambeau had caused to be made before he built his fence in 1873. The first house built on the Adams Street front was that of Archambeau.

Although the defendant took possession of lot 8 in 1877, Van Culin never did take possession of lot 7, or improve the same up to defendant's west fence. In 1877, lot 7 was vacant, and remained vacant for three years thereafter. When Mrs. Bond bought lot 7 of Van Culin in the fall of 1880, she had it surveyed, and built a fence on the Caroline Street side of it, and ascertained that defendant was over the east line of lot 7, and built her east fence inside of defendant's inclosure. There is no evidence, that Mrs. Bond had any notice of an agreement between Van Culin and the defendant as to the boundary line between Lots 7 and 8. Privies of a grantor, who is estopped, are not estopped if they are subsequent purchasers for value, and have no notice that he is estopped. (*Rutz* v. *Kehr,* 29 N. E. Rep. 553.) It appears that a dispute arose between Mrs. Bond and Mrs. Nitschelm as to the boundary between their lots, and negotiations were had between them to settle it, but the negotiations fell through without resulting in an agreement. After speaking of a conversation with Mrs. Bond on the subject, defendant says: "nothing more was said to me, and the thing was dropped; * * * I said I would move the fence if she insisted upon it." In these negotiations, defendant did not claim that there had been any settlement of the boundary line between herself and Van Culin. Her statement, that she would move her fence to the east, was inconsistent with the existence of such a settlement, and was a virtual admission that she had no right to keep her fence where it was. Nor is it proven, or even claimed, that the plaintiff

had any notice of the alleged settlement when he bought of Mrs. Bond in 1887. Neither he nor his grantors ever recognized the correctness of the location of defendant's west fence by the possession or improvement of lot 7, or otherwise.

The proof, moreover, does not show, that the person referred to by the defendant had any authority to agree to any other boundary line than that fixed by the recorded plat of Parrish's Addition. The defendant says that the person in question had the lots for sale, but it does not appear that he had any authority in writing to make such sale. It would seem that he had no authority to make the deed, as the deed was executed by Van Culin and his wife in Philadelphia. The defendant accepted the deed, which must be regarded as the best evidence of what was sold. The deed describes the lot as lot 8 in Block 123 in Parrish's Addition. This description refers to the lot as its boundaries are fixed by the recorded plat, and not to a lot whose boundaries were fixed by an oral agreement. The lot is not described in the deed as being a piece of land, 57 feet wide and $177\frac{1}{2}$ feet deep, lying west of Archambeau's fence. But even if the person referred to had the authority to sell lots 7 and 8, the authority to sell did not involve and imply the authority to make a parol agreement as to the boundary between the lots. The agreement for which the appellees contend would have the effect of taking a strip 11 feet wide from the east side of lot 7 and adding it to the west side of lot 8, thereby narrowing lot 7 to a frontage of 46 feet. This would be, in effect, a new division of the two lots. "A power to sell, simply, does not authorize a partition." (*Gosselin* v. *City of Chicago*, 103 Ill. 623.) It was not shown that the supposed agent had any authority from Van Culin to make such new partition of the lots. That he had any right to agree upon the Archambeau fence as a division line is negatived by the description in the deed subsequently executed.

The case was tried before the court below without a jury, the jury being waived by agreement. Judgment was rendered

in favor of the defendants.    The findings of the Circuit Court and its rulings upon the evidence were not in harmony with the views herein expressed.    Its judgment is accordingly reversed and the cause is remanded.

*Judgment reversed.*