349 P.2d 306

J. A. DOWNING and Ollie D. Downing, husband and wife, Plaintiffs-Respondents,

v.

William BOEHRINGER and Dorothy Boehringer, husband and wife, and Lawrence A. Paxton, and Blue Flame Gas Company, an Idaho Corporation, Defendants-Appellants.

No. 8710.

Supreme Court of Idaho.

Feb. 10, 1960.

Gigray & Boyd, Caldwell, for appellants.

Donart & Donart, Weiser, S. Ben Dunlap, Caldwell, for respondents.

TAYLOR, Chief Justice.

Plaintiffs (respondents) in January, 1950, sold to one, Stevens, a portion of a tract of land owned by them in or near Caldwell, in Canyon County. In 1951 Stevens and wife contracted to sell the property purchased from plaintiffs to defendant (appellant) Paxton. On or about September 17, 1951, Stevens and wife assigned the contract of sale to defendants (appellants) Boehringer. The defendant (appellant) Blue Flame Gas Company holds possession under Paxton.

Paxton built a small barn and boat shed on the property and in the spring of 1954 erected a dwelling house. Prior to the building of the house and at the time the lines for its location were being staked on the ground, plaintiffs objected to the location and warned defendants that the proposed building site was partially located on their property. Plaintiffs again protested to the location of the dwelling house during the digging of the basement and also during the erection of the building itself. In March, 1956, plaintiffs caused a survey to be made by a civil engineer for the purpose of locating the boundary line between the two properties. The survey showed an encroachment and occupancy of plaintiffs' property by the three buildings varying

from 3.5 feet to 8.2 feet from the true boundary.

December 6, 1956, plaintiffs commenced this action to recover possession of the strip of ground occupied by defendants' buildings. In their answer defendants allege:

"That after purchasing the property as described in paragraph 3 of plaintiffs' complaint from the plaintiffs, Stevens, in the year 1950, desired to change the location of an irrigation ditch serving the southerly corner of the plaintiffs' property, which ditch was meandering across the property that he had purchased from the plaintiffs and which property is described in paragraph 3 of plaintiffs' complaint. That the plaintiffs agreed to the change by Stevens of the location of said ditch and by mutual agreement the boundary between the properties of the plaintiffs and Stevens was determined to be the northwesterly bank of said ditch. That the northwesterly bank of said ditch, which is still in existence, has been the boundary between the respective properties since its construction in the year 1950. That the bank of said ditch upon the subsequent sale of the property by Stevens to Paxton was pointed out as the northwesterly boundary and likewise by Paxton to the Blue Flame Gas Company. That the dwelling house and barn alleged by the plaintiffs to be encroaching upon their property were constructed on the southeast side of said ditch and within the boundary line as established by it."

On trial, defendants called as a witness their predecessor in interest, Mr. Stevens. He testified:

"In the Fall of '50, or in the Summer of '50, there was a ditch going right diagonally across the place. It come in right next to the store and we couldn't back into the store very good there, and we asked him if we could move the ditch around and he said it would be all right, but he didn't think that we could do it. He didn't think the water would run there. He said it would be fine if we could get it up on the corner of his place where he could irrigate his lawn. * * *

"Mr. Downing was very agreeable to changing the ditch, providing we get the water over there. I traded him some machinery, a tractor and a plow and machinery, as a payment on that place, and it happened to be there and asked him if we could use the tractor and put a ditch in. * * *

"At that time Mr. Downing and Dad was with me and we tried to put this ditch through and I told Mr. Downing at that time that we would put it on— the ditch would have to be on my prop-

-erty, that Mr. Downing was there at the time, and he stepped over, and stayed on the corner, and guided me. Dad stayed on the other corner and I put the ditch through. * * *

"As near as we could judge, there wasn't any measurements, other than just the stepping of it, and Mr. Downing stepped off where he thought would be the line and we made the ditch. Now, we made it as straight as we could. If it was straight with this, I couldn't swear.

"Q. The ditch was made under the direction and supervision of Mr. Downing? A. That's right. * * *

"Q. For the purpose of establishing this ditch you had Mr. Downing point that out, is that correct? A. That's right."

Upon objection being made to further like testimony by the defense, the court ruled that the allegations of the answer were insufficient to constitute a defense in that neither adverse possession for the statutory period, mistake, acquiescence nor uncertainty as to the location of the true boundary line, was alleged.

Defendants were allowed to make an offer of proof. The offer does not encompass any proposed proof that the true boundary line was in dispute between plaintiffs and Stevens; nor that its location was uncertain, or unknown to either plaintiffs or Stevens. Defendants then moved to amend their answer by interlineation. The offer of proof and the motion to amend were denied by the court. Defendants did not reduce the proposed amendment to writing nor advise the court of its contents. Assuming that it would conform to the offer of proof, there was no error in denying leave to amend. The answer, the proof adduced, and the offer of proof were insufficient to support the defense of an agreed boundary.

 Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds (I.C. §§ 9–505 and 55–601) and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the

parties. Kunkle v. Clinkingbeard, 66 Idaho 493, 162 P.2d 892; Balmer v. Pollak, 67 Idaho 494, 186 P.2d 217; Clapp v. Churchill, 164 Cal. 741, 130 P. 1061; Tripp v. Bagley, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417 and Annotation 1433; Fallert v. Hamilton, 109 Cal.App.2d 399, 240 P.2d 1007; Tillinger v. Frisbie, 132 Mont. 583, 318 P.2d 1079; Annotation 113 A.L.R. 425; 11 C.J.S. Boundaries § 77; 8 Am.Jur., Boundaries, § 88.

"But the doctrine of an agreed boundary line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement fix the boundary line, and that agreement will bind all the consenting parties. Acquiescence is merely evidence of the agreement and can properly be considered as evidence of an agreement only when a formal agreement would itself have made a binding contract. But a formal agreement to fix a boundary line is not valid, indeed is void, if the parties know, or one of them knows, that the agreed line is not the true line, or, in other words, if there be not an actual or believed ·

uncertainty as to the true line." Clapp v. Churchill, 164 Cal. 741, 130 P. 1061, at pages 1062, 1063.

Defendants do not claim by adverse possession and the statutory period (I.C. § 5–203) had not run when the controversy arose. It is not clear upon appellants' brief whether they urge estoppel against plaintiffs. However, the showing is insufficient. Defendants were warned of the impending encroachment before the house was built. If the construction of the ditch is urged as an improvement made by defendants in reliance upon plaintiffs' alleged agreement as to boundary, it is not such a valuable or permanent improvement as would estop plaintiffs from claiming to the true line. Trimpl v. Meyer, 246 Iowa 1245, 71 N.W.2d 437. The ditch is a small irrigation lateral constructed with tractor and plow, and no showing was made of the expense involved.

Judgment affirmed.

Costs to respondent.

KNUDSON and McQUADE, JJ., and BROWN, D. J., concur.

PORTER, C. J., sat at the hearing, but died before the court reached its decision.