430 P.2d 486

**Alice FRY, Plaintiff-Respondent,**
v.
**Gloria SMITH, Defendant-Appellant.**
No. 9849.

Supreme Court of Idaho.

July 17, 1967.

Marcus, Leggat & Marcus, Boise, for appellant.

Ariel L. Crowley, Idaho City, for appellee.

TAYLOR, Chief Justice.

Plaintiff (respondent) brought this action to quiet title to a triangular tract of land situate in Sections 10 and 11, Township 8 North, Range 5 East, Boise Meridian, in Boise County, lying between the Banks-Lowman road on the north and the South Fork of the Payette river on the south, and adjacent to the boundary line between the properties of the parties. The lands of both parties were formerly owned by one August Rane. In January, 1948, Rane and wife conveyed Lot 10 of Section 10, and the westerly 100 feet of Lot 6, Section 11, to Daveda L. Crowley. Lot 6 of Section 11 borders Lot 10 of Section 10 on the east. In 1952 plaintiff and her late husband contracted with Mrs. Crowley for the purchase of the land conveyed by Ranes to Mrs. Crowley, and entered into possession thereof. April 9, 1957, Mrs. Crowley and her husband conveyed the land to plaintiff, then a widow (an error in the description

was corrected by correction deed in March, 1963).

In January, 1952, defendant (appellant) and her late husband Hugh Smith contracted to purchase (with other property) "all of Lot 6, except the westerly 100 ft. thereof, in Section 11," T. 8 N., R. 5 E.B.M., from Rane and wife. Hugh Smith died in November, 1957. In the probate proceedings settling his estate, "all of Lot 6, except the westerly 100 ft. thereof, Section 11;" T. 8 N., R. 5 E.B.M. (with other property) was distributed to defendant and her two minor daughters. Defendant contended that when she and her husband Hugh purchased the land in Lot 6 from Rane, the boundary line had not been marked on the ground; that her husband Hugh in the summer of 1952 built a fence intended to mark the boundary between the property purchased by defendant and her husband and the property previously purchased from Rane by Mrs. Crowley; that plaintiff and her husband, before the latter's death, acquiesced in the location of the fence built by Smith and in its status as a boundary line between their respective properties from 1952 until shortly before this action was brought (November 27, 1963). The land in dispute lies upon the east or Smith side of the fence and defendant contends that it has been in the open, notorious, exclusive, continuous, uninterrupted, adverse possession of herself and her late husband from the time of the construction of the fence in 1952 until shortly before the commencement of this action. Based upon such claimed state of facts, defendant claims title to the land (first) by adverse possession; and (second) by virtue of the fence having been constructed to settle an uncertain and disputed boundary, and acquiescence therein on the part of plaintiff and her predecessors.

The trial court found against defendant on both contentions and quieted plaintiff's title to the lands described in the deed from Crowleys to her, including the disputed land.

Upon trial evidence was adduced tending to show that the fence built by Hugh Smith was not constructed to mark the boundary between the properties of the parties, but was located across a portion of the lands deeded to Mrs. Crowley, with Mrs. Crowley's permission and as a matter of convenience to keep cattle out of Crowleys' swimming pool and to permit the use of a portion of the Crowley land by Smiths "to keep down the weeds."

■ The lot numbers in Sections 10 and 11, used in the various instruments of conveyance of the respective parties, were lot numbers established by government survey along the north meander line of the South Fork of the Payette river along its course through Sections 10 and 11. The record establishes that plaintiff and her predecessor Mrs. Crowley paid taxes every year during the claimed period of adverse possession, upon the land described in the conveyances from Ranes to Mrs. Crowley and from Crowleys to plaintiff, and that defendant and her late husband during that period paid taxes upon the land described in their contract to purchase from Ranes, and as it was described in the inventory of the Hugh Smith estate, and in the decree of distribution of the Hugh Smith estate. These latter descriptions expressly excluded the westerly 100 feet of Lot 6 in Section 11, previously conveyed to Mrs. Crowley. Thus the record conclusively establishes that defendant did not pay taxes on the land in dispute during any part of the claimed period of adverse possession. For that reason the claimed title by adverse possession was not established. Dickerson v. Brewster, 88 Idaho 330, 399 P.2d 407 (1965); Larson v. Lindsay, 80 Idaho 242, 327 P.2d 775 (1958); I.C. § 5–210.

■■ As to the title claimed by acquiescence or agreement in the settlement of uncertain and disputed boundary, defendant's proof also failed. The evidence showed that the south meander line on the north bank of the South Fork of the Payette river, between Sections 10 and 11, was in place and its location was known to the respective parties at all pertinent times. There was evidence that the parties did not know of

the exact location of the north section corner common to Sections 10 and 11, but there was no evidence that a survey following the government field notes would not have established its location. Under these circumstances the location of the section line running north and south between Sections 10 and 11 was not unknown, uncertain or doubtful. Cramer v. Driesbach, 77 Idaho 75, 287 P.2d 981 (1955); Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830 (1954); Campbell v. Wiesbrod, 73 Idaho 82, 245 P.2d 1052 (1952); Tripp v. Bagley, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417 (1928); Annos., 69 A.L.R. 1443, 113 A.L.R. 425. Likewise, a parallel line running north and south 100 feet east of the section line and describing the westerly 100 feet of Lot 6, Section 11, could not be said to be unknown, uncertain or doubtful.

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds (I.C. §§ 9–505 and 55–601) and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties." Downing v. Boehringer, 82 Idaho 52, at 56, 349 P.2d 306 at 308 (1960).

Balmer v. Pollak, 67 Idaho 494, 186 P.2d 217 (1947); Kunkle v. Clinkingbeard, 66 Idaho 493, 162 P.2d 892 (1945); 12 Am.Jur.2d,

Boundaries, § 79; 11 C.J.S. Boundaries § 67b.

 Moreover, the trial court found that the fence was located for the convenience of the parties, and that it was not built for the purpose of marking the boundary and never had been agreed upon as a boundary location. That finding is supported by substantial and competent evidence.

Judgment affirmed. Costs to respondent.

SMITH, McQUADE, McFADDEN and SPEAR, JJ., concur.