690 P.2d 896

**Dennis B. BERG and Nancy Berg, husband and wife, Plaintiffs-Respondents,**

v.

**Esther FAIRMAN, Defendant-Appellant.**

**No. 14681.**

Supreme Court of Idaho.

Oct. 3, 1984.
Rehearing Denied Nov. 30, 1984.

442

Mark William Russell, Ketchum, for defendant-appellant.

E. Lee Schlender, Ketchum, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from summary judgment in favor of respondents Berg in their action to quiet title to a strip of land claimed by Fairman under the doctrines of adverse possession and agreed boundary. We affirm.

The following facts are undisputed. As originally platted, all the lots in the Ketchum, Idaho subdivision in question here measured 55 feet by 100 feet. Alonzo and Carrie Price, husband and wife, owned Lots 1, 2, 3 and 4 of Block 22 in Ketchum. In 1929, Mr. Price built a fence which parallels the actual boundary line between Lots 3 and 4, but which was constructed 15 feet within Lot 3, and thereafter, from appear-

ances, it seemed that Lot 4 was 70 feet wide and Lot 3 was only 40 feet wide.

In 1953, the Prices transferred Lots 2 and 3 to their son William under a quit-claim deed which made no mention of the fence, but rather conveyed "Lots 2 and 3 in Block 22 of the townsite of Ketchum, recorded in the official plat of Ketchum on file in the office of the county recorder of Blaine County, Idaho." In 1955, Alonzo Price died, leaving his widow Carrie Lot 4, on which was located the family home. In 1974, Carrie Price died, leaving Lot 4 to her children, Esther Fairman and William Price, and in 1976, William transferred his undivided one-half interest in Lot 4 to Esther Fairman by quitclaim deed.

In the meantime, in 1972, William Price had transferred Lot 3 to William Duggan under a warranty deed, which made no mention of the fence or the 15 feet of Lot 3 which had been fenced. In 1973, George and Frances Hjort purchased Lot 3 under a warranty deed, which contained no reference to the fence or the disputed parcel. In 1978, the Hjorts sold the property to the Bergs, plaintiffs-respondents herein, by warranty deed, which contained no reference to the fence or disputed parcel. In 1981, the Bergs initiated the present action to quiet title to what had become the disputed 15-foot strip of land.

Fairman contends that since 1974, a 15-foot strip of Lot 3 has been fenced off and segregated from the balance of Lot 3 and that she has cultivated shrubs and flowers on that strip of land since that time. The only indication in the record before us relating to notice of adverse claim to the strip of land is an incident during the spring of 1977, when Mr. Hjort entered the disputed parcel to repair an old shed then existing thereon. Fairman specifically advised Hjort that the shed was on her property and that the fence was the boundary line between Lots 3 and 4. Hjort took no action at that time.

Fairman argues on appeal that her assertions of fact, if proved, would constitute a valid defense to the quiet title action of the Bergs upon the theory that

she or her predecessors have adversely possessed the 15-foot strip of land in question. Our statutes, I.C. §§ 5–209 and 5–210 delineate the requirements for an adverse possession claim not made upon the existence of a written instrument and require five years continuous actual occupation, which occupation is defined as protection of the claimed property by a substantial enclosure and usual cultivation or improvement. Previous decisions of this Court have firmly established that the burden of showing all of the essential elements of adverse possession is upon the party seeking title thereunder. *Loomis v. Union Pacific Railroad Co.*, 97 Idaho 341, 544 P.2d 299 (1975); *Smith v. Smith* 95 Idaho 477, 511 P.2d 294 (1973); *Hamilton v. Village of McCall*, 90 Idaho 253, 409 P.2d 393 (1965). Further, claimant must prove every element of adverse possession by clear and satisfactory evidence. *Loomis v. Union Pacific Railroad Co., supra.* As our authorities also hold, the burden of claimant to show possession of disputed property was hostile to that of the real owner and not with the permission of the real owner since "occupation without hostile intent" does not constitute adverse possession. *Hamilton v. Village of McCall, supra* at 258, 409 P.2d at 396; *Pleasants v. Henry*, 36 Idaho 728, 213 P. 565 (1923).

■ If the initial entry of the adverse claimant upon the disputed land was with the permission of the record owner, "the statute of limitation will not begin to run against the true owner until the adverse claimant establishes exclusive right in himself," and once it has been established that an adverse claimant's initial entry upon disputed land was with the permission of the record owner, "only an unequivocal act by the permissive user brought home to the true owner will start the running of the statute of limitations." *Gameson v. Remer*, 96 Idaho 789, 537 P.2d 631 (1975). When one occupies the land of a blood relative, such occupation is presumptively with the permission of the true owner.

*Tremayne v. Taylor*, 101 Idaho 792, 621 P.2d 408 (1980); *Smith v. Smith, supra.*

■ Fairman contends that the occupation by her predecessors in title to the disputed strip of Lot 3 should be presumed an adverse possession. When Alonzo and Carrie Price deeded Lot 3 to their son William Price and they retained possession of the disputed strip of land, because they were blood relatives of William, their possession of the disputed strip is presumptively permissive and not presumed to be held adversely. Fairman contends that the issuance of summary judgment was improper since there remains a genuine issue of material fact, *i.e.*, whether the occupation of the disputed strip by Alonzo and Carrie Price following their transfer of Lot 3 in 1953 was with the permission of William Price. We disagree. I.R.C.P. 56(e) states:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Here, Fairman was faced with a presumption of law that the occupation of the disputed strip was permissive and therefore it was incumbent upon Fairman to, by affidavit or otherwise, oppose the motion for summary judgment setting forth specific facts that would controvert the presumption of permissive occupation. *See Stewart v. Hood Corp.*, 95 Idaho 198, 506 P.2d 95 (1973); *Tafoya v. Fleming*, 94 Idaho 3, 479 P.2d 483 (1971). The record before us is devoid of any specific facts controverting the presumption and hence the Bergs are correct in their assertion that the presumption continues to prevail.

Since the occupation of the disputed strip was presumptively by permission of William Price, some unequivocal act indicating

the occupier's intent to claim adversely must be shown to change the character of the use from permissive to adverse. No facts showing any such unequivocal act are contained in the record before us prior to 1977. Assuming, as we must on summary judgment, that the 1977 act demonstrates an intent to change the occupation from permissive to adverse, nevertheless it was committed less than five years prior to the filing of this action and comes too late. I.C. § 5–210.

■■■ It is next contended that the trial court erred in concluding that Fairman could not show that the fence constituted a boundary line by acquiescence. While Idaho cases do recognize the doctrine of boundary by agreement, an orally agreed upon boundary cannot constitute the actual boundary between two pieces of property unless the true boundary line is "unknown to the parties and is uncertain or in dispute." *Hyde v. Lawson*, 94 Idaho 886, 889, 499 P.2d 1242, 1245 (1972). As has been stated,

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds ... and is invalid." *Gameson v. Remer, supra* at 791, 537 P.2d at 633; *Downing v. Boehringer*, 82 Idaho 52, 349 P.2d 306 (1960).

*See also Hyde v. Lawson, supra; Lisher v. Krasselt*, 94 Idaho 513, 492 P.2d 52 (1972); *Fry v. Smith*, 91 Idaho 740, 430 P.2d 486 (1967).

■■■ The record here, as before the trial court, indicates that such facts as were presented to the trial court were and are undisputed. They are remarkably similar to the facts of *Gameson v. Remer, supra*. In *Gameson* and here the properties consisted of two adjoining lots within a platted

and recorded subdivision and the erection of a fence purportedly severing property from one lot and adding it to the other. In *Gameson* this Court reversed the decision of the trial court because the true boundary line between the two lots was *not* in dispute, unknown or uncertain. In the instant case, albeit it is asserted that the fence constituted a boundary by agreement, there were no facts presented to the trial court that directly or by inference indicated that the true boundary line between the two lots was in dispute, unknown or uncertain. Therefore, the issuance of summary judgment contrary to defendant's claim of agreed boundary was proper. The only inferences that might arise from the facts are contrary to defendant's assertions, since all of the various conveyances of the properties were based on descriptions according to the official plat of the Ketchum townsite, with no reference therein to any fence or metes and bounds.

■■■ Again, we emphasize that the purpose of summary judgment proceedings is to eliminate the necessity of trial where facts are not in dispute and where existent and undisputed facts lead to a conclusion of law which is certain. *Bandelin v. Pietsch*, 98 Idaho 337, 563 P.2d 395 (1977), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977); *Jacobsen v. State*, 89 Wash.2d 104, 569 P.2d 1152 (1977); *see Hackin v. Rupp*, 9 Ariz.App. 354, 452 P.2d 519 (1969). If a party resists summary judgment, it is his responsibility to place in the record before the trial court the existence of controverted material facts which require resolution by trial. A party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise. Failure to so establish the existence of controverted material facts exposes a party to the risk of a summary judgment. We hold that such is the case here.

The summary judgment issued by the trial court is affirmed. Costs to respondent. No attorneys' fees on appeal.

DONALDSON, C.J., and BAKES, J., concur.

HUNTLEY, Justice, dissenting.

The majority decision completely ignores and destroys the long established law of boundary by fencing and agreement as articulated in *Edgeller v. Johnston,* 74 Idaho 359, 262 P.2d 1006 (1953) wherein the rule is enunciated as follows:

An agreement, fixing a boundary line, need not be shown by direct evidence but may be inferred from acts and conduct and especially from long acquiescence. *Kesler v. Ellis,* 47 Idaho 740, 278 P. 366; *O'Malley v. Jones,* 46 Idaho 137, 266 P. 797. See also *Campbell v. Weisbrod,* 73 Idaho 82, 245 P.2d 1052 and the cases cited therein. Such an agreement may be presumed to arise between adjoining landowners where such right has been definitely defined by erection of a fence or other monument on the line followed by such adjoining landowners treating it as fixing the boundary for such length of time that neither ought to be allowed to deny the correctness of its location. *Woll v. Costella,* 59 Idaho 569; 85 P.2d 679; *O'Malley v. Jones, supra; Bayhouse v. Urquides,* 17 Idaho 286, 105 P. 1066.

A boundary line established by agreement, between tracts of conterminous owners, followed by acquiescence and possession for the full statutory period of time required to acquire title by prescription, operates to establish, determine and fix the true line or division separating, and the location of, the respective estates of such conterminous owners. *Mulder v. Stands,* 71 Idaho 22, 225 P.2d 463; *Strahorn v. Ellis,* 66 Idaho 572, 165 P.2d 294.

74 Idaho 359, at 365.

The true nature of this controversy can best be understood by a diagram, not drawn to scale, which illustrates the situation:

The fence was constructed in 1929 and has been continuously maintained since that date. Over the intervening years, the various owners of Lot 4 have cultivated the land to the fence and have placed shrubbery against the fence line.

The fence attaches to the rear of the shed; there is no door on the Lot 3 (Berg) end of the shed; and the shed is bisected by the platted lot line which would divide the parcels into equal 55 foot lots.

As I understand Idaho law, when people purchase lots with boundary line fences on them and view the lots prior to making their purchases, that what they see is what they purchase, the legal description on a recorded plat notwithstanding.

Esther Fairman is entitled to prevail on either one of two theories, or is at least entitled to have the issues tried rather than disposed of by summary judgment. The first theory is the doctrine of boundary by agreement. A boundary line fence was constructed, acknowledged and acquiesced in by the parties who owned the respective parcels for a forty-nine year period preceding the Bergs purchase of Lot 3 in 1978.

The majority opinion correctly notes the law of Idaho in the following statement:

While Idaho cases do recognize the doctrine of boundary by agreement, an orally agreed upon boundary cannot constitute the actual boundary between two pieces of property unless the true boundary line is "unknown to the parties and is uncertain or in dispute." *Hyde v. Lawson,* 94 Idaho 886, 889, 499 P.2d 1242, 1245 (1972).

and then proceeds to ignore that law by the statement at page 6:

> In the instant case, albeit it is asserted that the fence constituted a boundary by agreement, there were no facts presented to the trial court that directly or by inference indicated that the true boundary line between the two lots was in dispute, unknown or uncertain. Therefore, the issuance of summary judgment contrary to defendant's claim of agreed boundary was proper. The only inferences that might arise from the facts are contrary to defendant's assertions, since all of the various conveyances of the properties were based on descriptions according to the official plat of the Ketchum townsite, with no references therein to any fence or metes and bounds.

Unless the parties have had the boundary line surveyed and surveyor's monuments are visible on the premises, the boundary line is unknown and uncertain, and in dispute. The majority cites no authority for the proposition that the doctrine of boundary by agreement vanishes and is inoperative when there happens to be a lot and block description recorded with a plat.

The second basis upon which Esther Fairman might prevail is that of open, notorious, and hostile possession for a period of more than five years. The court erroneously ruled that there was not a continuous five-year period (after the two lots had separate owners) because it failed to recognize the doctrine of "tacking" as against successive owners of the Berg lot (Lot 3). The Court set 1973 as the first date when adverse possession would be possible, that being the time when the parcels were first separately owned. The Court then established a second time when adverse possession could be possible as beginning in 1976.

A Mr. Hjort owned the Berg parcel in 1977 and he entered on the disputed 15 foot tract in 1977 to fix the shed at which time he was specifically advised by Esther Fairman that the shed was on her property and that the fence was the boundary line between Lots 3 and 4. Mr. Hjort was therefore informed that the possession was open, notorious and hostile but did nothing. The Court ruled that there was no five-year period because the complaint was filed on August 4, 1981. That would be a proper conclusion only if the Court were correct in not tacking on the adverse possession period starting in 1973 when a Mr. Duggan obtained title to Lot 3. Mr. Duggan was also subject to the open, notorious and hostile use, possession and cultivation of the 15 foot strip by the owners of Lot 4.

If the majority does not reverse its position on rehearing, the bench and bar should look upon this decision as merely an unexplained "aberration" and provide this Court with an opportunity to attempt to explain itself and reconcile its past decisions in a subsequent case.

Certainly there were issues of fact to be resolved and disposition by summary judgment was totally inappropriate.

BISTLINE, J., concurs.