(No. 5600. Decided July 24, 1905.)

RUSSELL T. NOYES *et al., Respondents,* v. JAMES A. DOUGLAS, *Appellant.*[1]

ADVERSE POSSESSION—BOUNDARIES—MISTAKE—CLAIM OF RIGHT. The possession of land, inclosed through a mistake as to the location of the boundary line, is shown not to have been adverse or under claim of right, where the owner of city lots, after eight years possession, had the lines surveyed before building and took possession of, improved and claimed his own lots as located by such survey.

SAME—ABANDONMENT OF POSSESSION. An abandonment of possession is shown, where the owner of city lots, after a survey of the boundaries, removed all improvements from a strip of the adjoining lots that he had inclosed by mistake, and took possession of his own lots according to the survey and, for two years before the statute had run, the strip in question remained uninclosed and with improvements too insignificant to challenge attention to an adverse claim.

Appeal from a judgment of the superior court for King county, Bell, J., entered December 22, 1904, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Reversed.

*Douglas, Lane & Douglas* and *Richard Saxe Jones,* for appellant.

*Benson, Hall & Higgins,* for respondents.

1Reported in 81 Pac. 724.

RUDKIN, J.—On the 17th day of November, 1891, the plaintiffs acquired by purchase lots six and seven, of block one, of Wirth's addition to the city of Seattle. Soon after their purchase, they located the lots upon the ground, took possession, cleared and fenced them, and planted them to fruit trees, grass and shrubbery. They continued thus to occupy and use the premises until some time in the year 1900. In the latter year the plaintiffs, contemplating the construction of a new house, employed one George F. Cotterill, a civil engineer, to make a survey of the lots and mark the boundaries. By this survey the lots were located twenty-one feet east, and three feet south, of the original location—that is, the original location overlapped twenty-one feet on lots four and five to the west, and three feet on lot eight to the north. The plaintiffs thereupon graded lots six and seven and constructed their house thereon, with reference to the Cotterill survey, and removed the trees and shrubs and all improvements, except the grass, from the twenty-one foot strip formerly occupied. Some time in the year 1902 a small chicken house and yard, which had theretofore been maintained on lot 8, was removed to the overlap on lot 4, and extended about seven feet beyond the overlap.

This action was brought by the plaintiffs against the defendant, as record owner of lots four and five, to quiet title to the twenty-one foot strip above described, the plaintiffs claiming lots six and seven by virtue of their deed, and the twenty-one foot strip across the east end of lots four and five by adverse possession. The plaintiffs had judgment in accordance with the prayer of their complaint, and the defendant appeals.

The judgment appealed from cannot be sustained, for two reasons: First, because no adverse possession was shown; and second, because there was a substantial abandonment of the premises in controversy within the statutory period. Taking into consideration the conduct of the respondents, and all the surrounding circumstances, it cannot be said

that their possession was adverse. They only had claim or color of title to the two lots; they only paid taxes on the two lots, so far as the record discloses; as soon as they contemplated permanent improvements, they took the precaution to have an accurate survey made by a competent surveyor; they located all their improvements within the limits of the lots as shown by this survey, thus showing conclusively that they at all times claimed title to lots six and seven according to the true boundaries when ascertained. Under what pretense, then, can they claim title to property lying without the boundaries of the two lots? We think these facts bring the case within the decisions of this court in *Suksdorf v. Humphrey,* 36 Wash. 1, 77 Pac. 1071, and *Wilcox v. Smith,* 38 Wash. 585, 80 Pac. 803, where the rule applicable in such cases is thus stated:

"If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseizure, but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse."

Furthermore, we think the testimony clearly shows a substantial abandonment of the strip of land in controversy within the statutory period of ten years. As soon as the mistake in the boundary was discovered, the respondents immediately removed all their improvements and everything removable from the disputed tract. Some two years later, they moved a small chicken house and yard from lot 8, not owned by them, and located the same on this tract, but for at least two years before the statute had run its course, this strip was uninclosed and the improvements thereon were insignificant in character and value, and wholly insufficient in law to challenge the attention of the owner or a purchaser to the fact that the premises were held or claimed adversely.

As said by this court in *Blake v. Shriver,* 27 Wash. 593, 68 Pac. 330.

"The whole testimony convinces us that the claimant, when he went there, simply squatted upon the land for present convenience; that he had no color of title or claim of right to it in any sense whatever; that he did not even intend or think of obtaining title to it, by the statute of limitations or in any other way, at the time he settled upon it, or for many years thereafter; that the occupation was purely permissive, by reason of the circumstances which we have above portrayed; and that it was the intention upon the part of these claimants to reap the benefit to which they are not entitled by now claiming an adverse possession for ten years. It is not such strolling, straggling occupancy as is shown by the testimony in this case that constitutes a notice of adverse possession. It is the history of most cities of this country that where lands are lying idle, either from being held by non-residents, or from being tied up in lengthy litigation, that a certain class of people squat upon them and build for present use what are called shacks or shanties, and are frequently not disturbed for many years. And this was exactly the condition of affairs in Spokane in reference to these lands in dispute. It is not conducive to public morals to allow a stranger to take possession of property which is in dispute between two citizens, and claim that it is his because the owner has a controversy over it with some one else. *Even if, under such circumstances, adverse possession could ripen into title by reason of large improvements which would necessarily challenge the attention of the owner as being inconsistent with any other theory than that of ownership on the part of the builder, no such notice is given in this case, where the testimony shows, as do the findings of the court, that the improvements were insignificant in character and value, and were only necessary to the occupancy of these lots as a place of residence.*"

For the foregoing reasons the judgment is reversed, with directions to enter a decree quieting the title of the appellant to the disputed tract as prayed in his answer.

MOUNT, C. J., CROW, FULLERTON, HADLEY, and ROOT, JJ., concur.