# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ERNEST EMMERT and THERESA EMMERT, husband and wife, | No. 52766-9-II |
| Respondents, | |
| v. | |
| ROBERT GARTEN and JANE DOE GARTEN, husband and wife, and HAWN GARTEN, and all other persons or parties unknown claiming any right, title, lien, or interest in the real estate described in the complaint herein, | UNPUBLISHED OPINION |
| Appellants. | |

CRUSER, J. — Robert Garten, Jane Doe Garten, husband and wife, and Hawn Garten (collectively, "Gartens") appeal the trial court's order finding them in contempt of court for violating a court order. The Gartens argue that the trial court erred because (1) the trial court's finding that the Gartens violated the trial court's order is not supported by substantial evidence; (2) even if they violated the trial court's order, substantial evidence does not support a finding that they did it intentionally; (3) the order did not include a purge clause; (4) the court awarded attorney fees and costs to Ernest Emmert and Theresa Emmert, husband and wife, (collectively, "Emmerts"); and (5) the court did not award them attorney fees and costs from the injunction bond. The Gartens also request attorney fees and costs on appeal, as do the Emmerts.

We conclude that substantial evidence supports the trial court's contempt finding. We hold that the trial court did not abuse its discretion in granting attorney fees and costs to the Emmerts, and we decline to decide the Gartens' remaining challenges to the contempt order and their claim

that they are entitled to attorney fees and costs from the injunction bond. We also decline the Gartens' request for attorney fees and costs on appeal. Finally, we award attorney fees and costs on appeal to the Emmerts.

Accordingly, we affirm.

FACTS

A. BACKGROUND

The Emmerts purchased a waterfront property in Jefferson County in 1995 via statutory deed. In 2013, the Gartens purchased the tidelands parcel directly south of the Emmerts' waterfront parcel.[1] The Gartens also purchased the neighboring waterfront parcel, which was directly east of the Emmerts' property. Thus, the Emmerts shared their southern and eastern boundary lines with the Gartens.

In 2015, a dispute between the neighbors erupted about the location of the northern/southern boundary line between their two properties. The Emmerts disassembled a shelter that the Gartens had built on the beach, believing it was located beyond the northern boundary of the Gartens' tidelands property, therefore within the southern part of their property. The Gartens confronted the Emmerts about the destruction of the shelter and began yelling and screaming at the Emmerts, claiming that the shelter was located on their tidelands property.

B. PRETRIAL EVENTS

The Emmerts filed suit against the Gartens. The Emmerts sued for trespass, emotional distress, and interference with the quiet enjoyment of their property. The Emmerts asked for a judgment against the Gartens in the amount proven at trial, as well as attorney fees and costs. The

---

[1] This tidelands parcel is directly below the portion of the beach owned by the Emmerts.

Emmerts requested the court enter an order establishing the boundary line between the parties' properties as set forth in their deed and a survey recorded in 1995, or in the alternative, by adverse possession. The Emmerts' deed relied on the 1995 survey as establishing their boundary lines. The Emmerts also requested a restraining order against the Gartens from trespassing on their property and using threatening language against the Emmerts.

In their answer to the Emmerts' complaint, the Gartens contested the Emmerts' ownership of the disputed property, claiming they had ownership via quit claim deed. The Gartens claimed that the southern boundary of the Emmerts' parcel was actually higher, or farther north, than the boundary line as described in the Emmerts' deed. The Gartens also claimed the Emmerts committed trespass and claimed that they were entitled to damages and attorney fees and costs.

The Emmerts moved for a preliminary injunction to restrain the Gartens from trespassing, damaging, or occupying their property as described in their deed and the 1995 survey. On July 22, 2016, the trial court granted the Emmerts' motion and ordered the Gartens to "cease and desist crossing the boundary line established by the 1995 survey and maintained by Emmerts." Clerk's Papers (CP) at 38. The trial court also ordered the Emmerts to post a surety bond as security in the amount of $10,000 to the registry of court.

The Emmerts moved for partial summary judgment, arguing that they had legal ownership of the disputed property by deed, or in the alternative, by adverse possession. The Emmerts also argued that they were entitled to damages because the Gartens' defense that they owned the disputed property was frivolous. The trial court denied the Emmerts' motion.

The Emmerts moved for reconsideration of their summary judgment motion. Although their complaint and their summary judgment motion relied on their deed and the 1995 survey for their proposed boundary line, the Emmerts relied on a 2016 survey performed by Kathleen Cassou (the "Cassou Survey") in their reconsideration motion. The Emmerts asked the court to rule that their correct southern boundary line was the boundary line established in the Cassou Survey, referred to as the balanced government meander line. This line, the "Cassou meander line," is located north of the boundary line described in the Emmerts' deed and the 1995 survey.

The Emmerts also asserted in their motion for reconsideration that their claim of adverse possession pertained to only the strip of land south of the Cassou meander line and north of the boundary line established by their deed and the 1995 survey. The Emmerts claimed that they would pursue their claim of adverse possession at trial.

On April 19, 2017, the trial court granted the Emmerts' motion for reconsideration. The court's order stated, however, that title to the property "legally described in the Complaint is hereby quieted in" the Emmerts. *Id.* at 217. The court's order stated that the Gartens were "permanently ordered to cease and desist crossing the boundary line at the balanced government meander line confirmed by the Cassou Survey." *Id.* at 217. Thus, the order was internally inconsistent. The Emmerts' complaint relied on the line set forth in their deed, which was south of the Cassou meander line.

The trial court also entered a contemporaneous memorandum opinion. The court's memorandum stated that the Cassou meander line established the southern boundary of the Emmerts' property and the northern boundary of the Gartens' property. The court ruled that the Emmerts' deed improperly granted the Emmerts additional property south of the Cassou meander

line. The court also repeated its order that the Gartens not cross the Cassou meander line. The issue of adverse possession to the area south of the Cassou meander line was reserved for trial. The court also ordered the bond filed by the Emmerts to be exonerated.

The Gartens moved for clarification and reconsideration of the court's April 19, 2017 order. The Gartens pointed out the inconsistency within the trial court's order and between the trial court's order and memorandum. The Gartens asserted that "it appears that the Court's intent was to set the southern boundary" as the Cassou meander line in its order and memorandum. *Id.* at 222. However, this contradicted the trial court's order that the Emmerts be granted title to the property as pled in their complaint because their complaint was based on the property description in their deed. The Gartens asked the court to rectify the conflict by reversing its order or by correcting the conflict between the order and memorandum.

In response to the Gartens' motion for reconsideration and clarification, the court entered a second memorandum opinion on June 19, 2017. The court clarified that the April 19 order "was intended to simply carry out the terms" of its first memorandum opinion. *Id.* at 229. The court concluded by asserting that it would consider a revised order presented to carry out its April 19 memorandum opinion, but the "terms and extent of the Court's ruling in the Opinion are clear. [Gartens'] motion is otherwise denied." *Id.* at 230.

C. TRIAL PROCEEDINGS

The case proceeded to trial on the limited issues of (1) whether the Emmerts adversely possessed the land south of the Cassou meander line down to the boundary as established by their deed, (2) whether the Gartens committed trespass by building a shelter on the Emmerts' property, and (3) whether the Gartens' defense was frivolous.

During closing argument at trial, the Gartens briefly raised a question related to the location of the east/west boundary between the Gartens' and Emmerts' parcels. This area was termed the "deed overlap."[2] Report of Proceedings (RP) (Mar. 29, 2018) at 44, 45, 54. The Cassou Survey identified a strip of land on the east side of the Emmerts' property where the legal description of the Gartens' property in the Gartens' deed overlapped with the legal description of the Emmerts' property in the Emmerts' deed.[3] Based on the record provided to us, the Gartens raised this issue solely in response to the Emmerts' trespass claim and the Emmerts' claim that the Gartens raised a frivolous defense. At no time did the Gartens ask the trial court to settle or quiet title to the area where the deeds overlap in their favor. Rather, the Gartens stated the deed overlap was relevant to show that the Gartens were not trespassing when they built the structure on the beach because they had an ownership interest to the area where they built the shelter. The Gartens also argued that their claim that they owned the disputed property was not frivolous because the legal description of their land encompassed the area where they built the structure.

---

[2] A deed overlap occurs when the legal descriptions of adjoining parcels conveyed by deed overlap. *Noyes v. Douglas*, 39 Wash. 314, 315, 81 P. 724 (1905). Such conveyances create an overlap in ownership rights.

[3] The Gartens also discussed the deed overlap in their trial brief. In their brief, the Gartens asserted that they were "advancing [their] claims at trial to offer evidence to defend the claims against them. However, the evidence [would] show a deed overlap that rebuts the trespass and frivolous defense claims." CP at 231. The Gartens further argued that the evidence would show a deed overlap on the area where the Emmerts accused the Gartens of trespassing. The Gartens claimed that they would introduce evidence "that the overlap exists, and [they] [have] superior title to that area." *Id.* at 245.

The trial court announced its ruling following closing arguments on March 29, 2018. The court reaffirmed its decision on the Emmerts' motion for reconsideration of summary judgment. The court ruled that the Emmerts did not adversely possess the land south of the Cassou meander line. At trial, the court and both parties referred to this area as the "hashed area" because the Cassou Survey contained hashmarks over the area the Emmerts claimed by adverse possession to signify the property that was in dispute. *E.g.*, CP at 201; RP (Mar. 29, 2018) at 7, 20, 50, 53, 54, 64, 65, 70.

The court also found that there was insufficient evidence to establish trespass by the Gartens. The court reasoned that the Gartens did not wrongfully use the property because they thought it was theirs.

The trial court then asked the parties if it had "missed anything" in its ruling, and the following colloquy ensued:

> [Gartens]: So, Your Honor, with your ruling, then, does that mean the injunction that's still in place prohibiting Mr. Garten and his family from going to the hashed area is now dissolved?
> [Court]: Yes.
> [Gartens]: Then I have nothing else.
> [Court]: Mr. Nichols, have I missed anything?
> [Emmerts]: Is the injunction still in place above the hashed area?
> [Court]: Is it necessary?
> . . . .
> [Emmerts]: I believe [it is] necessary, Your Honor.
> [Court]: What is your position, Mr. Seaman?
> [Gartens]: Your Honor, I would like to talk to my client about that. It may be something that we could work something out without having to come back to you for any further discussions with the Court, so I'm not going to ask the Court to dissolve that right now.
> [Court]: Okay. I'll just leave that as it is, but if you guys can talk; and if there has to be an argument about it, we can deal with it later, but I'll leave that as it stands.

7

RP (Mar. 29, 2018) at 70-71. Therefore, the injunction prohibiting the Gartens from entering the Emmerts' property above their southern boundary, or the Cassou meander line, remained in place.

D. CONTEMPT PROCEEDINGS

On July 16, 2018, the Emmerts moved to hold the Gartens in contempt of court for entering their property in violation of the trial court's April 19, 2017 order, which was reaffirmed in the court's oral decision on March 29, 2018. As discussed above, the April 19, 2017 order granting the Emmerts' motion for reconsideration permanently ordered the Gartens to cease and desist from entering the Emmerts' property above the Cassou meander line. On March 29, 2018, the court reaffirmed its decision on reconsideration at trial and determined it would not dissolve the injunction prohibiting the Gartens from entering the Emmerts' property above the Cassou meander line. The Emmerts also requested the court impose remedial sanctions and award attorney fees and costs.

The Emmerts claimed that the Gartens entered their property in violation of the order on five occasions between June 30, 2018 and July 5, 2018. The Gartens were served with the motion on July 16. The Emmerts filed a supplemental declaration documenting the Gartens entering their property on multiple occasions after July 16. The Emmerts provided the court with pictures of the Gartens parking cars on their property and a boat on their beach.

The court heard argument on the Emmerts' motion.[4] The Gartens argued that they did not intentionally disobey the court's order because they entered only the area where they allegedly had

---

[4] The parties also requested the court enter a final judgment at the contempt hearing. Consequently, the trial court did not enter a written order as well as its findings of fact and conclusions of law until November 21, 2018, seven months after the conclusion of trial.

an ownership interest due to the deed overlap. The Gartens claimed that ownership of the deed overlap was an issue that was never resolved at trial. Therefore, the Gartens contended, it was still unclear as to whether the Emmerts owned the property encompassed in the deed overlap. The Gartens then changed their argument, claiming they believed that they owned the land encompassed in the deed overlap area because they allegedly prevailed on this issue at trial.

In response, the Emmerts asserted that the trial court never ruled that the Gartens owned the property encompassed in the deed overlap. The Emmerts argued that even if the court had ruled that the Gartens owned the property within the deed overlap, the Gartens entered a portion of their property that was *not* encompassed in the deed overlap.

The court addressed the Gartens' assertion that they owned the area encompassed in the deed overlap and disagreed.

> [Court]: So I'm just thinking out loud that when I made the summary judgment decision, I said Emmerts own everything north of [the Cassou] meander line; right?
> [Gartens]: Yes.
> [Emmerts]: Yes.

RP (Nov. 2, 2018) at 98. The court further stated the following:

> When I decided that the Emmerts' property went down to that meander line, my vision at the time was the Emmerts owned everything above that; and when we came into trial, the issues were simply was there a trespass, was there a frivolous Defense, and adverse possession of the [tidelands].

RP (Nov. 2 2018) at 104.

The court granted the Emmerts' motion for contempt. The court stated that it reviewed its oral ruling made on March 29, 2018, which reaffirmed its April 19, 2017 order granting the Emmerts' motion for reconsideration, and found that there was not any confusion regarding the injunction that remained on the Emmerts' property above the Cassou meander line. The court found that the Gartens were promptly notified that they were entering the Emmerts' property when

9

served with the Emmerts' contempt motion, and they continued to enter the property above the Cassou meander line. The court declined to impose punitive sanctions or remedial sanctions, but awarded the Emmerts attorney fees and costs.

The court also entered a written order. The order stated that the Gartens were in contempt of court for violating the court's April 19, 2017 and March 29, 2018 orders on at least five occasions. The written order also ordered the Gartens to pay the Emmerts' attorney fees and costs incurred as a result of the contempt proceeding.

The Gartens appeal the trial court's order of contempt.

DISCUSSION

I. CONTEMPT OF COURT

We review a trial court's contempt ruling for an abuse of discretion. *Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 768, 271 P.3d 331 (2012). An abuse of discretion is present only if there is a clear showing that an exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We will uphold the trial court's contempt finding if a proper basis for contempt can be found. *Tiger Oil Corp.*, 166 Wn. App. at 768.

Contempt of court consists of any intentional disobedience "of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). Where the court's basis for its finding of contempt is disobedience of a court order, "the order must be strictly construed in favor of the contemnor." *Tiger Oil Corp.*, 166 Wn. App. at 768 (quoting *Stella Sales, Inc. v. Johnson*, 97 Wn. App. 11, 20, 985 P.2d 391 (1999)). In a contempt proceeding, "an order will not be expanded by implication beyond the meaning of its terms when read in light of the issues and the purposes for

which the suit was brought." *Johnston v. Beneficial Mgmt. Corp. of Am.*, 96 Wn.2d 708, 712-13, 638 P.2d 1201 (1982).

The trial court's findings must establish a plain violation of the order and must be supported by substantial evidence. *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 601-02, 359 P.3d 823 (2015). "'Substantial evidence' means evidence that is sufficient 'to persuade a rational, fair-minded person of the truth of the finding.'" *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (internal quotation marks omitted) (quoting *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007)). "[T]he moving party has the burden of proving contempt by a preponderance of the evidence." *In re Marriage of James*, 79 Wn. App. 436, 442, 903 P.2d 470 (1995).

Here, the record unquestionably supports the violations found by the trial court. The Emmerts documented the Gartens on their property on multiple occasions after the trial court ordered the Gartens to cease and desist from crossing the Cassou meander line and entering the Emmerts' property. But the Gartens argue that the trial court's contempt order should be reversed for several reasons. We address their arguments in turn.

A. VIOLATION OF THE APRIL 19 ORDER

The Gartens argue that there was no violation of a court order because (1) the court had previously dissolved the injunction in the area where they were found in contempt for entering, and (2) the trial court awarded the Gartens legal title to the area where they were found in contempt for entering. We disagree.

*1. THE TRIAL COURT DID NOT DISSOLVE THE INJUNCTION*

The Gartens first argue that there was no violation of a court order because the court previously dissolved the injunction that prohibited the Gartens from crossing the Cassou meander line and entering the Emmerts' property, as set forth in the April 19, 2017 order that the court found they had violated. The Gartens are mistaken.

On July 22, 2016, the trial court granted the Emmerts' motion for a preliminary injunction, which ordered the Gartens to "cease and desist" from crossing the boundary line established by their deed and the 1995 survey. CP at 38. On April 19, 2017, the court granted the Emmerts' motion for reconsideration of its order on summary judgment and ordered the Gartens to "*permanently* … cease and desist" from crossing the Cassou meander line, the boundary line separating their properties.[5] *Id.* at 217 (emphasis added). In its memorandum opinion on the order, the court repeated its order that the Gartens were not to cross the Cassou meander line. In the court's second memorandum opinion, entered on June 19, 2017 in response to the Gartens' request for clarification, the court cleared any confusion from its April 19 order and memorandum by asserting that the April 19 order "was intended to simply carry out the terms" of the contemporaneous memorandum opinion. *Id.* at 229.

On March 29, 2018, the trial court reaffirmed its April 19, 2017 order and memorandum opinion following closing arguments at trial. At this time, the trial court ordered the injunction to be dissolved *below* the Cassou meander line. The Emmerts asked the court whether the injunction

---

[5] The court's order effectively altered the court's previous preliminary injunction order because the boundary line as established by the Emmerts' deed is further south than the Cassou meander line.

was still in place above the Cassou meander line, stating that it was necessary. When the court

asked the Gartens for their position on the matter, the following took place:

> [Gartens]: Your Honor, I would like to talk to my client about that. It may be something that we could work something out without having to come back to you for any further discussions with the Court, so *I'm not going to ask the Court to dissolve that right now*.
> [Court]: Okay. I'll just *leave that as it is*, but if you guys can talk; and if there has to be an argument about it, we can deal with it later, but *I'll leave that as it stands*.

RP (Mar. 29, 2018) at 70-71 (emphasis added).

The Gartens mischaracterize the above colloquy by claiming that the court "invited the

parties to come back to Court to address any issue concerning whether the injunction remained"

above the Cassou meander line. Br. of Appellant at 29. It is clear from the record that there was

not a question of whether the injunction prohibiting the Gartens from crossing the Cassou meander

line remained. The Gartens did not challenge the Emmerts' request to keep the injunction in place

above the Cassou meander line, stating that they would not request the court to dissolve the

injunction. The court expressly stated that it would leave the injunction prohibiting the Gartens

from crossing the Cassou meander line "as it stands" and invited the parties to return only "if there

has to be an argument about it." RP (Mar. 29, 2018) at 71.

Therefore, we find that the Gartens' argument that they did not violate a court order has no

merit because the trial court did not dissolve the injunction above the Cassou meander line, where

the Gartens were found in contempt for entering.

*2. THE GARTENS DID NOT HAVE LEGAL TITLE TO THE LAND ON WHICH THE CONTEMPT ORDER WAS BASED*

The Gartens claim that there was no violation of a court order because the trial court awarded the Gartens legal title to the area that the court found that they wrongfully entered, referred to as the deed overlap area.[6] Again, the Gartens are mistaken.

As noted above, the Cassou Survey shows that on the east side of the Emmerts' property and the west side of the Gartens' property, there is a small strip of land where the legal descriptions of the Emmerts' and the Gartens' properties in their deeds allegedly overlap. However, the Gartens never disputed the location of the Emmerts' eastern boundary line as described in the Emmerts' deed. The boundary line at issue in this case was the Emmerts' southern boundary. Therefore, the trial court was never asked to settle a dispute about the location of the Emmerts' eastern boundary line or to quiet title to the area where the Gartens claimed that their deeds overlapped.

The Gartens claim that they raised the question of who owned the property encompassed in the alleged deed overlap area at trial, and they prevailed. Somehow, the Gartens twist events at trial and the court's final ruling as altering the Emmerts' eastern boundary line *above* the Cassou meander line and quieting title of the land in the deed overlap to the Gartens. The record, however, belies this claim. As noted above, the Gartens did not raise the issue of a deed overlap as a standalone issue or claim. Moreover, even if the Gartens had raised the issue of a deed overlap as a standalone issue or claim, the Gartens never made a counter claim to quiet title to the land encompassed in the deed overlap.

---

[6] At the hearing on the Emmerts' contempt motion, the parties disputed whether the Gartens entered onto only the property encompassed in the alleged deed overlap. The trial court did not make a factual finding on this issue.

And even if the Gartens had moved to amend their pleadings to make it a counter claim, the trial court never addressed or ruled on the issue. The Gartens' counsel conceded this fact. At the contempt hearing, the Gartens' counsel agreed with the court that the issue was never resolved, and that the court never made a ruling on the alleged deed overlap issue. Thus, the Gartens could not have believed when they entered the property that gave rise to the contempt finding that they had been awarded that property.

Therefore, the Gartens' claim that they did not violate a court order because they entered an area where they had legal title lacks merit.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT THE GARTENS INTENTIONALLY VIOLATED THE APRIL 19 ORDER

The Gartens also contend that even if they violated the trial court's order, their violations were not intentional because they did not understand where they were prohibited from entering. The Gartens argue that they did not understand what area they were prohibited from entering due to differing surveys containing a hashed area, inconsistencies in the court's orders, and the deed overlap. The Gartens argue that due to their confusion, there was not substantial evidence of an intentional violation. We disagree.

RCW 7.21.010(1) states that contempt of court must be intentional. For a contemnor to act intentionally, he or she must have actual or constructive "knowledge of the existence and substantive effect of the court's order or judgment." *In re Estates of Smaldino*, 151 Wn. App. 356, 365, 212 P.3d 579 (2009). "[A] person who is properly served is deemed to have knowledge." *Id*.

The Gartens' argument that substantial evidence does not support a finding that they intentionally violated the trial court's order appears to be based on the trial court's ruling on

15

trespass at trial.[7] At trial, the court ruled that there was insufficient evidence of trespassing because when the Gartens used the Emmerts' property, they thought it was their own. Therefore, there was insufficient evidence to establish intentional trespass.[8]

As noted above, to rebut the Emmerts' trespass claim, the Gartens argued that they had an ownership interest to where they built the shelter because it was built in the area where their deed overlapped with the Emmerts' deed. In an effort to show their confusion, the Gartens claim that the trial court's ruling on the trespass claim could easily be interpreted as ruling that they have senior title to the property within the deed overlap. The Gartens contend that their deed overlap theory is "the most logical legal rational why trespass didn't[] occur" because, the Gartens allege, the trial court rejected their other defense to trespass, jus publicum. Br. of Appellant at 31. In other words, the Gartens assert that because the court concluded that they didn't trespass and rejected their jus publicum theory, one could easily make the inference that the court found their deed overlap theory to have merit.

---

[7] The Gartens' argument is that (1) because the trial court found no evidence of trespass at trial when the Gartens did enter the deed overlap area, we should assume that the Gartens believed they owned the deed overlap area; (2) because we should assume that the Gartens believed they owned the deed overlap area, the trial court must have ruled that they *did* own the deed overlap area; (3) because the Gartens entered only in the deed overlap area after trial, they were not in contempt.

[8] To prove intentional trespass, one must show "'(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages.'" *Grundy v. Brack Family Tr.*, 151 Wn. App. 557, 567-8, 213 P.3d 619 (2009) (quoting *Wallace v. Lewis County*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006)).

The Gartens' assumption relies on mischaracterizations of the record. The trial court explicitly *did not* reject the Gartens' jus publicum argument.[9] Gartens' statement that their deed overlap theory was "the most logical legal rational why trespass didn't[] occur" completely disregards the trial court's ruling that there was insufficient evidence to establish trespass because the Gartens thought the property was theirs. Br. of Appellant at 31. Therefore, the Gartens' assertion that the trial court's ruling on trespass at trial caused confusion regarding ownership of the area encompassed in the deed overlap is baseless.

The Gartens also argue that they were confused about where they were prohibited from entering because the trial court's pretrial orders were unclear. The court's April 19, 2017 order was inconsistent with its memorandum opinion because the order stated that the Emmerts' southern boundary was as described in their deed and complaint, but the memorandum opinion stated that the southern boundary was the Cassou meander line. However, the court's inconsistency was remedied through the court's second memorandum opinion, where the court clarified that the Cassou meander line was the correct boundary and that the April 19, 2017 order "was intended to simply carry out the terms of the Memorandum Opinion." CP at 229.

Furthermore, the Gartens' claim of confusion regarding the court's orders is rebutted by their counsel's statements in closing argument at trial. For example, counsel acknowledged that

---

[9] After ruling that there was insufficient evidence to establish trespass, the court stated the following:

> And I'm not going to get into the Jus Publicum Doctrine and all that kind of stuff. I mean, that might be another reason, but even without considering that and the public's right to use tidelands, and so on, I don't think that there was evidence of trespass.

RP (Mar. 29, 2018) at 67.

the court previously ruled that Emmert "owns down to the [Cassou] meander line," and they agreed with the court when it ruled that the Cassou meander line was the Emmerts' southern boundary. RP (Mar. 29, 2018) at 52. The Gartens' claim of confusion regarding the area encompassed in the hashed area is also rebutted by counsel's statements in closing argument. The court and counsel repeatedly referred to the hashed area as the area on the Cassou Survey below the Cassou meander line that was disputed at trial.

Here, the superior court's finding that the Gartens intentionally entered the Emmerts' property is supported by substantial evidence. A plain reading of the record supports the trial court's finding that there was no confusion regarding the remaining injunction on the Emmerts' property or where the Gartens were prohibited from entering. Furthermore, even if the Gartens' assertion that they were confused about the remaining injunction or where they were prohibited from entering had merit, the trial court found that the Gartens were promptly notified that they were entering the Emmerts' property when the Emmerts served their contempt motion on the Gartens, and the Gartens still continued to enter the property above the Cassou meander line. This finding is uncontested.

Accordingly, we hold that the evidence supporting the court's finding of contempt is sufficient to persuade a rational, fair-minded person that the Gartens intentionally disobeyed the court's previous order.

C. ATTORNEY FEES

The Gartens argue that the trial court abused its discretion by awarding attorney fees and costs to the Emmerts because the court should not have found the Gartens in contempt. We disagree.

We review a trial court's award of attorney fees for an abuse of discretion. *Rapid Settlements, Ltd.*, 189 Wn. App. at 607. A court may "order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees." RCW 7.21.030(3); *see also R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 505, 903 P.2d 496 (1995).

Here, the trial court did not abuse its discretion when it found the Gartens in contempt of court. The Emmerts incurred attorney fees and costs in connection with the contempt proceeding. Under RCW 7.21.030(3), the trial court is permitted to order the Gartens to pay for the Emmerts' fees incurred as a result of the proceeding. Accordingly, we affirm the trial court's award.

D. REMAINING ISSUES

The Gartens identify several more issues pertaining to the contempt order and the court proceedings leading to the contempt order. The Gartens argue that the trial court erred by failing to set forth a purge clause in the contempt order and by failing to make a finding that the Gartens intentionally violated the contempt order. The Gartens also argue that the trial court abused its discretion by declining to award the injunction bond to the Gartens to cover their damages and costs. We decline to consider these issues.

Under RAP 10.3(a)(6), an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of

the record." The Gartens cite to no legal authority supporting their remaining claims, and in the limited instances where they do provide argument in support of their claims, their argument lacks any cogency. "Without adequate, cogent argument and briefing, this court should not consider an issue on appeal." *State v. Tinker*, 155 Wn.2d 219, 224, 118 P.3d 885 (2005) (quoting *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990)).

Furthermore, in regard to the Gartens' argument that they are entitled to the injunction bond to cover their damages and costs, the Gartens never appealed the trial court's decision pertaining to the injunction bond. The Gartens fail to mention that their argument is based on a separate trial court order, let alone explain how the trial court's decision pertaining to the injunction bond is reviewable pursuant to RAP 2.4(b) or RAP 2.4(c).

Due to the Gartens' violations of RAP 10.3(a)(6), we do not consider these arguments.

## II. ATTORNEY FEES ON APPEAL

Both parties request attorney fees and costs on appeal pursuant to RAP 18.1(a).[10] We deny the Gartens' requests for fees, but award the Emmerts' fees because the Gartens' appeal is frivolous.

RAP 18.1(a) entitles a party to reasonable fees and costs if an applicable law grants that right. RCW 7.21.030(3) permits an appellate court to assess fees and costs against the party found

---

[10] The Gartens also argue that they are entitled to fees because the Emmerts committed procedural bad faith. However, the record does not reflect that the Gartens requested fees due to the Emmerts' bad faith in bringing their contempt motion at the trial court level. Because the Gartens failed to raise their argument below, the Gartens cannot raise it on appeal. RAP 2.5(a); *see also Elliot Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 15, 98 P.3d 491 (2004) (failing to ask for attorney fees at trial waives that claim on appeal).

in contempt of court pursuant to a contempt proceeding. This includes an award of attorney fees incurred in defending an appeal of a contempt order. *Magnuson*, 79 Wn. App. at 502.

Here, the Gartens were found in contempt at the trial court level, and they are not defending an appeal of a contempt order. Therefore, RCW 7.21.030(3) does not grant them the right to reasonable attorney fees and costs under RAP 18.1(a). Accordingly, we deny the Gartens' request for attorney fees and costs on appeal.

In regard to the Emmerts' request for fees on appeal, they failed to cite to the applicable law that grants their right to attorney fees on appeal or make any supporting argument, failing to meet the requirement of RAP 18.1(a).

However, under RAP 18.9(a), an appellate court may, on its own initiative, award respondent's attorney fees for having to defend against a frivolous appeal. *West v. Thurston County*, 169 Wn. App. 862, 867-68, 282 P.3d 1150 (2012). "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

The Gartens pursued an appeal without merit. The Gartens' main assignment of error hinges on their own illogical assumptions, mischaracterizations of the record, and misunderstanding of the law. The resolution of their remaining claims is either based on an order that is not subject to review because the Gartens did not appeal it, or not subject to review due to the Gartens' inadequate briefing and failure to comply with the rules of appellate procedure.

Therefore, we exercise our discretion and award the Emmerts fees and costs for defending against this frivolous appeal.

21

CONCLUSION

We hold that substantial evidence supports the trial court's contempt finding and the trial court did not abuse its discretion when awarding attorney fees and costs to the Emmerts. Because the Gartens failed to comply with RAP 10.3(a)(6), we do not consider their challenges to the contempt order or their argument that they are entitled to fees from the injunction bond. We also decline the Gartens' request for fees and costs on appeal and grant the Emmerts fees and costs based on the Gartens' frivolous appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Cruser, J.

We concur:

_____
Sutton, A.C.J.

_____
Glasgow, J